IN THE TAX COURT OF THE
STATE OF OREGON

H. Ted WATKINS
*v.*

DEPARTMENT OF REVENUE
*and*

JACKSON COUNTY ASSESSOR,
*Intervenor*
(TC 4077)

H. Ted Watkins, Plaintiff (taxpayer), Eagle Point, appeared *pro se*.

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, represented Defendant (department).

Steven R. Rinkle, Assistant County Counsel, Medford, represented Jackson County (intervenor).

Decision for intervenor rendered July 9, 1997.

**CARL N. BYERS, Judge.**

Plaintiff appeals from an omitted property assessment for the 1995-96 tax year adding value to his partially completed residence. Jackson County intervened and defends on the ground that the additional assessment was merely the correction of a clerical error. There is no dispute of material facts, and the matter has been submitted to the court on cross motions for summary judgment.

## FACTS

Plaintiff (taxpayer) owns land in Eagle Point. As of July 1, 1994, a temporary residence and partially completed residence were located on the property. The temporary residence was assessed at $6,000 for the 1994-95 tax year, and the partially completed residence, of which only the foundation was constructed, was assessed at $5,960. One year later, July 1, 1995, (the assessment date in question), the floor joists and subfloor had been installed, the house was sheathed and framed, and the roof had been completed. Also completed was a 10-foot wide covered porch around the entire perimeter of the western-style house.

An appraiser from the assessor's office visited the property in August 1995. After an initial disagreement, he and the taxpayer agreed that the house was 28 percent complete as of the assessment date of July 1, 1995. The assessor then calculated a value of $30,013 for the house as 28 percent complete and a separate value of $21,834 for the porch as 100 percent complete. However, the assessed value for improvements placed on the roll was only $31,450; representing $25,490 for the temporary residence and $5,960 for the partially completed residence. Later, the taxpayer disputed the assessed value of the temporary residence. In response to the taxpayer's objections, the assessor's office reviewed its records and discovered that the improvements made to the new house after July 1, 1994, had been omitted from the tax roll. The assessor's office agreed with the taxpayer that the temporary residence was overassessed. Accordingly, the assessor corrected the roll by reducing the value of the temporary residence to $6,000 and increasing the value of the new residence to $51,850. Taxpayer does not dispute the procedure or authority of the assessor to make the correction.

What he does contend is that the porch is an integral part of the house and is subject to the same percentage of completion as the house.

## ISSUE

Should the porch, which is an integral part of the house, be assessed at the same percentage of completion?

## ANALYSIS

■   ORS 308.232 directs that all taxable real property be assessed at its real market value as of July 1 for each tax year. ORS 308.205 defines real market value as the minimum amount an informed seller would accept and the highest amount an informed buyer would offer. However, that definition, commonly viewed as a "fair market value" definition, assumes an active or "immediate" market by which value can be inferred from a number of transactions. ORS 308.205(2)(c) recognizes that sometimes there is no market:

> "If the property has no immediate market value, its real market value is the amount of money that would justly compensate the owner for loss of the property."

■   Rarely is there a market for partially completed structures. Accordingly, assessors commonly use the cost approach. That approach is generally accurate for new construction even when complete, but is particularly helpful in estimating the potential loss to an owner.

Cost estimates and data are collected statewide and furnished to assessors by the Department of Revenue. The assessors adjust these cost factors for local conditions where appropriate. Cost factors are most often utilized by applying a cost per square foot for particular classes of property with additional expenses for particular features such as brick fireplaces and chimneys.

Using the *Cost Factors for Residential Buildings 1993* book, the assessor estimated that taxpayer's total house would cost $114,033 exclusive of porches, patios, decks, and flat work. This was reduced by $6,842 for local conditions. The appraiser then estimated that the house was only 28 percent complete. With these two adjustments, he estimated the value of the house at $30,013, and the value of the completed

porch at $21,834. This gave him a total estimated value for the residence, including the porch, of $51,850 (rounded). The clerical error occurred when $5,960 was placed on the tax roll instead of $51,850.

Taxpayer contends that the assessor may not value the porch separately from the house because it is an integral part of the house. Taxpayer argues that if the house was only 28 percent complete, the porch must be considered as only 28 percent complete. In taxpayer's view, the total assessed value should be $35,752.

The fallacy of taxpayer's position is disclosed by considering the assessor's worksheet estimating the percentage of completion. That worksheet estimates the proportion of cost that each component of the house represents to the total. For example, it estimates that the foundation represents 4 percent of the total cost of the house. As completed by the appraiser, the sheet indicates that the following components were complete: foundation (4 percent), joists and subfloor (4 percent), framing (11 percent), sheathing (3 percent), and roofing (6 percent), resulting in a 28 percent completion.

The 28 percent estimate includes the full value of each component part. The assessed value on the roll does not include just 28 percent of the cost of the completed roof, but the entire cost of the completed roof. Likewise, the assessment must include 100 percent of the completed porch. To say that the house is only 28 percent complete is merely a way of determining the stage of completion.

The assessor could have used a different cost method, such as totaling the cost of the work completed as of July 1, 1995. Totaling the costs of the foundation, joists and subfloor, framing, sheathing, and roof (including the value of all labor) should yield the same assessed value as estimating 28 percent of the total cost. That total would clearly represent the loss to the owner if the property was destroyed.

Taxpayer appears concerned that the department's expression of the assessor's authority in its Opinion and Order is too broad and excessive. Taxpayer maintains that a single structure is subject to a single assessment.

█ Taxpayer is correct that the assessor's duties are governed by statute and that for each account, the improvements are subject to a single assessment. *See Bear Creek Plaza v. Dept. of Rev.*, 12 OTR 272 (1992) and ORS 308.215. However, taxpayer is in error regarding the methods and techniques used to value property. Even though the house and porch may be a single integral improvement, the methods of valuation permit and may even require the assignment of separate values to component parts to ascertain the value of the whole. Separately valuing the parts of the structure to determine the value of the whole is consistent with appraisal theory and Oregon's property tax laws. This is made abundantly clear where a single property account includes more than one improvement. For example, where two separate houses are located on one parcel of land, the assessor will separately value each house and then place the total of those values on the roll as the assessed value for improvements. So long as the assessor's estimate of value for each improvement or each component part is accurate, properties will be fairly and uniformly assessed in accordance with the statute. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Intervenor's Motion for Summary Judgment is granted. Costs to neither party.