DECISION
Plaintiffs appeal the real market value of their property for tax year 2007-08. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on Wednesday, November 5, 2008. Chetan Pratap Shah (Plaintiff) appeared and testified on behalf of Plaintiffs. Bryan Daum (Daum), Certified Inspector, and Mark D. Huffman (Huffman), Certified Appraiser, testified on behalf of Plaintiffs. Jack W. Graff (Graff), Residential Appraisal Supervisor, appeared on behalf of Defendant. Donald MacNicoll (MacNicoll), registered property appraiser, appeared and testified on behalf of Defendant.
 I. PRELIMINARY MATTERS
In response to various communications from the parties, court proceedings were opened with a reading of selected sentences from the Preface of the Oregon Tax Court Magistrate Division Rules. Defendant's failure to complete a certificate of service and Plaintiffs' failure to timely file a motion showing good cause for allowing telephone testimony and violation of the parties' agreement not to include photographs in exhibits were discussed. The court returned Plaintiffs' Exhibit 2, pages 7 and 8 and stated that it would ignore photographs appearing on the top of Plaintiffs' Exhibit 8, page 1. The court allowed Plaintiffs' telephone testimony request. *Page 2 
Plaintiff and the court verified that Defendant properly served its exhibits even though Defendant failed to properly complete a certificate of service.
Plaintiffs filed an Amended Complaint on October 23, 2008. Plaintiff explained that the amended complaint was filed because his evidence supported a different real market value than stated in his original Complaint. The court reviewed ORS 305.412[1] which provides in pertinent part that the "court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS305.412 (2007). Because the court has the authority to determine value based on the evidence, Plaintiffs' motion to file an Amended Complaint was denied.
The parties stipulated that as of the assessment date, January 1, 2007, the subject property was 50 percent complete.
Defendant verbally amended its Exhibit A at 1, as follows:

 BOPTA
 Adjudicated Value Opinion of Value Recommend
Assessed Value: $452,590 $450,730 $450,730

Plaintiffs' Exhibits 1 through 11 excluding Plaintiffs' Exhibit 2, page 7 and 8 and Defendant's Exhibit A were offered and received.
 II. STATEMENT OF FACTS
The subject property is located in an eighteen lot subdivision known as Braedon Heights in the west hills of unincorporated Washington County. (Ptfs' Ex 2 at 1; MacNicoll testimony.) Plaintiff purchased the land on May 6, 2005, paying $250,000 for the .20 acre parcel that is situated on a corner. (Def s Ex A at 12.) Plaintiffs' approximately 6,500 square foot personal residence that is the subject of this appeal was approximately 50 percent complete as of *Page 3 
January 1, 2007. (Def's Ex A at 4.) MacNicoll testified that as of that date the structure was framed and roof and windows installed, and there might have been "rough plumbing and wiring" but "no interior sheeting, flooring or finish doors." Plaintiff concurred, stating that as of the assessment date the structure was "not sheetrocked" and none of "finish work was completed."
Plaintiff testified that cost is a "reliable indicator of value" for "new construction." Huffman agreed, testifying that "cost is never more applicable than when a structure is under construction." Gerald Thurlow, sole proprietor of Northwest Bookkeeping Service, prepared a statement declaring that as of January 31, 2007, Plaintiffs "spent a total of $638,929.75 including lot price of $250,578.97 and construction labor and material in the amount of $388,350.78. Records are available to substantiate these expenses. " (Ptfs' Ex 4 at 1.) MacNicoll used the 1993 Oregon Department of Revenue Cost Factor Book adjusted for local cost multipliers to determine an improvement value of $533,920. (Def's Ex A at 10.) To the improvement value, MacNicoll added a land value of $289,170 for a total value of $823,090 as of the assessment date. (Id.) Plaintiff questioned MacNicoll as to why the county is using the 1993 Cost Factor Book when the Department of Revenue "released and mandated that the counties use" the 2005 Cost Factor Book. MacNicoll explained that based on "current sales from the market" a "local cost modifier is developed" which is applied to the 1993 costs.
Plaintiff challenged MacNicoll's determination that his property is a "class 6 plus 30 percent." MacNicoll responded stating "appraiser's use opinion" is based on the property's "street presence." He then described Plaintiff's property, testifying that it had "three different types of finish work, curved staircases, mosaic tile up and down, marble and wood flooring and two sets of pillars in the front." Plaintiff challenged MacNicoll's cost estimate of $27,090 for the fire sprinkler system. MacNicoll testified that the value came from the Cost Factor Book. *Page 4 
Plaintiff testified that the fire suppression system had a "burdened cost" of $8,345. Huffman and Plaintiff concluded that the market "would not pay such premium" and the "contributory value" of a "sprinkler system" is not "more than cost." MacNicoll testified that he did not include the elevator and sound system in his cost estimate because the elevator was not installed as of January 1, 2007, and he was "denied access" to verify the sound system model type and quality.
Huffman and MacNicoll reviewed the details of their comparable sales analysis. (Ptfs' Ex 2; Def's Ex A at 8.) Huffman, a certified appraiser with more than 22 years of experience, testified that he prepared a "full retrospective appraisal," using only information available prior to January 1, 2007. Using sales of three comparable properties, he concluded that the real market value of the subject property if it was "100 percent complete would have been $1,160,000 or $683,750 as of the date of assessment when it was 50 percent complete." (Ptfs' Exs 2 at 2; 11 at 1.) MacNicoll testified that Huffman's first comparable sale is "not a sale," but rather a refinancing and two of Huffman's comparable properties are located in Multnomah County, not Washington County where the subject property is located.
MacNicoll determined an "indicated value" of $1,350,000 if the subject property was "100 percent complete" as of the assessment date and, because the subject property was 50 percent complete as of the assessment date, the indicated value should be $819,500. (Def's Ex A at 8.) He relied on four adjusted sales of properties all located in the Braedon Heights subdivision. Both MacNicoll and Huffman selected the sale of a property located three houses south of the subject property as comparable. MacNicoll concluded that the adjusted sale price of that property was $1,339,600, and Huffman concluded that the adjusted sale price was $1,209,100. (Def's Ex A at 8; Ptfs' Ex 2 at 2.) Huffman challenged MacNicoll's analysis because MacNicoll included adjusted sales of two properties that sold after January 1, 2007. *Page 5 
Huffman stated that "[o]ne of the primary assumptions of performing a retrospective appraisal is that you cannot use information that was not available as of that retrospective date. Observing this assumption all sales utilized in their grid should have closed prior to 1/1/07." (Ptfs' Ex 11 at 2.) In response, MacNicoll testified that "the county prefers" to "use sales" around the assessment date, "before and after" that date.
Plaintiff and Huffman request that if the "county is allowed to use adjusted sales occurring after the assessment date," then the real market value of the subject property should be adjusted for numerous identified "costs to cure" structural and cosmetic defects of the subject property. (Id.) Daum, a certified home inspector who has completed more than 6,000 full home inspections since 1984, testified that he inspected the subject property in August, 2008. He testified that the builder of Plaintiffs' home was "out of his element" and that the "structural and design complexity" of Plaintiffs' home required "a craftsman, not a journeyman." Daum testified that repair of some of the identified "problems" such as "HVAC and wiring" would "make the house unliveable" while the work is being done. Even though some of the identified defects would have been "obvious," like the "apparent roofing errors" and "entryway concrete," on January 1, 2007, it is impossible "to call what you can't see" or "estimate cost to cure." Huffman agreed that the "cost to cure could not have been known at January 1, 2007." MacNicoll agreed that as of Daum's August 2008, inspection the "incomplete or construction defects" are not a "contentious issue," but queried how there could be a "cost to cure for things" which had not been "added" to the subject property as of the assessment date. He stated that "those defects need to be addressed at the appropriate time," which would be subsequent tax years. *Page 6 
 III. ANALYSIS
Plaintiffs appeal the 2007-08 real market value of their property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." Richardson v. Clackamas CountyAssessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citingGangle v. Dept. of Rev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
This court has previously concluded that real market value "assumes an active or `immediate' market by which value can be inferred from a number of transactions." Watkins v. Dept. of Rev.(Watkins), 14 OTR 227, 229 (1997). InWatkins, the court stated that "[r]arely is there a market for partially completed structures. Accordingly, assessors commonly use the cost approach." Id. The court suggested that "statewide" data can be collected and compiled into cost factors that can be adjusted by the county assessor for local conditions. Id. These factors can then be used to estimate the total cost of a structure in a given location. Another equally satisfactory method is for the assessor to total "the cost of the work completed as of" the assessment date. Id. at 230.
The parties stipulate that the subject property was 50 percent complete as of the assessment date. Each party submitted cost evidence. Plaintiffs submitted a cost statement for the period ended January 31, 2007, stating total cost for land and construction to date was $638,929.75. (Ptfs' Ex 4 at 1.) Plaintiffs' information was for a period ending 31 days after the assessment date. Plaintiffs did not present a cost statement as of January 1, 2007. The cost statement may or may not include the cost of *Page 7 
all work completed as of the assessment date; it reports to include all payments made by Plaintiffs as of January 31, 2007.
To determine the subject property's value using the cost approach, MacNicoll used "cost factors" that were "adjusted * * * for local conditions." Watkins, 14 OTR at 229. He determined a real market value of $823,090. (Def's Ex A at 10.) MacNicoll's land value was $289,170 which he testified included onsite development costs and market appreciation of the land. (Def's Ex A at 10.) It is unlikely a buyer would agree that a partially completed structure makes the underlying land more valuable than a bare undeveloped lot. MacNicoll's improvement cost estimate included costs for paving, patio, fire sprinkler system, and a sauna that were not completed or installed as of the assessment date. (Id.) MacNicoll's cost estimate assumed that the home was constructed in a workmanlike manner. Given the agreed conclusion that the subject property has structural defects, the quality of the craftsmanship as of the date of assessment is unknown. MacNicoll's cost approach using the Cost Factor Book adjusted for the local cost multipliers for improvements that were not in existence or completed as of the assessment date and an appreciated land value potentially overstate the value of the subject property.
For a partially completed structure like that owned by Plaintiffs, there may be no market. ORS 308.205(2)(c) provides that "[i]f the property has no immediate market value, its real market value is the amount of money that would justly compensate the owner for loss of the property." Using the cost approach suggested by Watkins to determine value and the evidence presented, the court concludes that Plaintiffs' cost *Page 8 
statement reasonably sets forth "an amount of money that would justly compensate" Plaintiffs "for loss of" the subject property.
 IV. CONCLUSION
The court concludes that the cost approach is the only acceptable method of valuation for the subject property that was 50 percent complete as of the assessment date. After careful review of the evidence, the court finds that the real market value of Plaintiffs' property as of January 1, 2007, is $638,930. Now, therefore,
IT IS THE DECISION OF THIS COURT that the real market value of the subject property identified as Account R2132793 as of January 1, 2007, is $638,930.
IT IS FURTHER DECIDED that Plaintiffs' motion to file an amended complaint is denied.
Dated this _______ day of January 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onJanuary 21, 2009. The Court filed and entered this document on January21, 2009.
[1] Unless otherwise stated, references to the Oregon Revised Statutes (ORS) are to 2005.