DECISION
Plaintiff has appealed the real market value (RMV) of certain real property consisting of a home and land in rural Lane County and identified as Account 1771318. The appeal is from the county board of property tax appeals (BOPTA). The tax year at issue is 2008-09. Trial was held October 27, 2009. Plaintiff was represented by David E. Carmichael, Attorney at Law. Charlie McCown (McCown) also appeared and testified for Plaintiff. Defendant was represented by Bryce Krehbiel, an appraiser with Defendant's office.
 I. STATEMENT OF FACTS
The subject property is a newer three bedroom, two bath, 1,812 square foot home located on a treed lot on the McKenzie River, in a remote area 10 miles from the nearest small town of Vida. (Ptf s Ex 1 at 1.) Construction of the home began in 2007 and was completed in 2008. The parties agree the home was 55 percent complete on January 1, 2008.
The value on the rolls, as well as the values requested by the parties, are as follows:

 Assessor Original BOPTA Plaintiff Defendant
RMV
 Land $312,232 $230,019 $150,000 $230,020[1]
 Improvement $132,140 $132,140 $93,500 $132,140
 Total $444,372 $362,159 $243,500 $362,159
 *Page 2 
Exception RMV
 New Construction $141,237 $141,237 $102,597 $141,237
 Other $109,129 $0 $0 $0

There is some disagreement and confusion about the size of the lot. McCown insists it is surveyed at 0.76 acres, a figure supported by a 2005 "Notice of Pending Land Use Decision By The Lane County Planning Director," as well as Lane County Land Management documents submitted by Defendant. (Ptf s Ex 1 at 12; Def s Exs V, W.) However, Defendant submitted a listing of the home in October 2009 which lists the lot at 1.49 acres, and Defendant's cartographer calculated the lot to be 1.49 acres. (Def s Exs O, F.) In the end, Krehbiel testified that the "legal" lot size is 0.76 acres. Krehbiel opined that the difference may be due to determinations of the waterline. The court finds the lot to be 0.76 acres.
The lot is irregular in shape, unusually long and narrow, 610 feet long along the McKenzie Highway (Highway 126), and varying in width from the street to the river (front to back), from 86 feet on the west end down to 20 feet on the east end. (Ptf s Ex 1 at 7, 8.) The home sits on the wider west end of the lot, approximately 40 feet from the highway, and experiences considerable noise from passing vehicles, particularly trucks slowing down for a nearby bend in the road. The property is also located in an identified flood zone. (Ptf s Ex 1 at 13.)
Plaintiff reports the total construction costs for the completed home were $162,583. (Ptf s Ex 1 at 9.) However, McCown testified that he did some of the work himself, including installing hardwood floors and cabinets, tile work in the bathroom, and interior painting. McCown estimated the value of his labor to be $7,000. McCown, who has considerable experience in real estate, having bought and sold houses for more than 40 years and currently owning approximately 20 rental houses, testified that he took over supervision of the *Page 3 
construction of the home after the framing was completed. McCown estimates the typical associated contractor fee for his oversight supervision and management to be approximately $5,000. Finally, McCown testified on cross-examination that the cost of permits was between $6,000 and $7,000. The total of all those costs, which represents the investment in the completed structure, comes to approximately $181,000, or just under $100 per square foot.[2]
As for the value of the land, McCown and his wife have indicated in testimony and written submissions, that a local realtor and resident named Rick Willhite has advised them that, in his opinion, the "lot" is worth somewhere between $130,000 and $150,000, with the $150,000 figure representing the "top end." (Ptf s Ex 1 at 8, 14.) McCown testified that the cost of installing a well and septic system, work done before January 1, 2008, was $16,300 ($6,300 for the well and $10,000 for the septic system).[3] It is not clear whether the realtor's alleged land value estimate includes the cost of those improvements.
Plaintiff also submitted information on the listing of a nearby property two houses away that was on the market for $310,000 as of July 8, 2009. (Ptf s Ex 1 at 16-19.) The home was built at the same time as the subject, and is on the McKenzie River. Looking at the information Plaintiff submitted pertaining to that property, the owners appear to have initially listed the property for $415,000 in May 2009. (Ptf s Ex 1 at 16.) The home is approximately 200 square feet smaller (1,629 square feet compared to Plaintiffs 1,812 square feet), and on a lot that is less than the one-fourth the size of the subject (8,276 square feet versus Plaintiffs 33,106). (Ptf s Ex 1 at 16, 17, 18.) Plaintiff notes that the buyer of that property could purchase the adjoining bare lot for an additional $65,000. (Id at 18.) *Page 4 
In valuing the property for trial, Krehbiel estimated the RMV on the January 1, 2008, assessment date based on the projected final value of the home multiplied by the percent complete, plus the value of the land. Krehbiel estimated the value of the completed home to be $240,255, or $132,140 at 55 percent complete. It is not clear how Krehbiel arrived it his value estimate. Krehbiel estimates the value of the land to be $230,020, for a total of $362,160 as of January 1, 2008. Krehbiel testified that Plaintiff began marketing the property on May 9, 2008, and that the subject was listed for $479,000 as of October 7, 2009. The documents supporting that testimony show that the property was initially listed in May 2008 for $595,000, and after four decreases in the asking price over roughly 18 months, was on the market for $479,000 in October 2009. (Def s Exs O, P.) Plaintiffs response is that the listing information for the subject property shows only that Plaintiff was unable to sell the property for approximately 18 months and was asking too much for the home.
Krehbiel testified to several comparable sales. According to his testimony, Krehbiel's best comparable is a 1,868 square foot home located near the subject on a 1.23 acre riverfront lot that sold on December 31, 2007, for $548,000, or $293 per square foot (land and home). (Def s Ex Q.) Krehbiel's second comparable sold in October 2007 for $525,000, or $298 per square foot for the package (land and home). (Def s Ex R.) That home is a 1760 square foot structure on a 1.19 acre lot on the river. (Id) Krehbiel's third comparable is a 1707 square foot home on a 1.37 acre riverfront lot that sold in July 2008 for $625,000, or $366 per square foot (land and home). (Def s Ex S.) Plaintiff brought out during cross-examination that all of those homes sit on deeper lots, a fact that makes them more desirable because the homes can and do sit farther away from the highway. That information is supported by rebuttal exhibits Plaintiff submitted after the trial. (Ptf s Rebuttal Exs 2 through 7.) Additionally, Defendant's third comparable has a view of the golf course. (Def s Ex S.) *Page 5 
 II. ANALYSIS
The main issue in this case is the RMV of the partially completed home as of the January 1, 2008, assessment date for the 2008-09 tax year. See generally ORS 308.007.[4] RMV is defined in ORS 308.205(1) as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
This court has previously concluded that real market value "assumes an active or `immediate' market by which value can be inferred from a number of transactions." Watkins v. Dept. of Rev.(Watkins), 14 OTR 227, 229 (1997); see also Shah v. WashingtonCounty Assessor (Shah), TC-MD 080354B,2009 Ore Tax LEXIS 7 at *9 (Jan 21, 2009) (citing Watkins). InWatkins, the court stated that "[r]arely is there a market for partially completed structures. Accordingly, assessors commonly use the cost approach." Id. Subsequent to Watkins, this court stated that "with the construction of new homes * * * it is common to rely on cost data." Hochstein v. Lane County Assessor
(Hochstein), TC-MD 070351,2008 Ore Tax LEXIS 28 at *4 (Feb 13, 2008) (citing Bohlin v. Lane County, TC-MD 060249D (September 27, 2006)). The court in Hochstein
followed the Watkins court, noting that "[t]here is rarely a market for partially completed structures."Id. at *4 (citing Watkins, 14 OTR at 229.)
The two common methods for determining value under the cost approach are: (1) using published and approved cost data such as that compiled by Marshall Swift and incorporated into the Oregon Department of Revenue's valuation materials; and (2) actual costs.Watkins at 229, 230.
The court in Hochstein accepted the taxpayers' value approach, which relied on the taxpayers' actual reported construction costs, plus 10 percent for builder's fee and entrepreneurial profit. Hochstein, 2008 Ore Tax LEXIS 28 at *2. The 10 percent additional fee was added because *Page 6 
Hochstein was a professional contractor and built their home. InShah, the taxpayers hired a contractor to construct their home and the court determined the value of their partially completed home based on actual reported costs as of the assessment date.Shah, 2009 Ore Tax LEXIS 7 at *10, *12.
The court in the instant appeal finds the actual reported costs to be the most persuasive evidence of the value of Plaintiff s partially completed home as of January 1, 2008. Those costs, when totaled to include builder's profit, homeowner's labor and additional material costs, etc., come to $181,000. At 55 percent complete, the RMV is $99,550. All of that value is "exception value," which is relevant for determining the property's MAV. McCown testified that he spent an additional $16,300 for the well and septic system in 2007. Given that there is no other relevant information by which the value of those components may be determined, the court finds $16,300 to be additional exception value (RMV), a value which is statutorily attributed to the land and probably constitutes "other" exception value under Defendant's reporting system. That brings the total exception RMV to $115,850. Defendant shall calculate the exception MAV by multiplying that figure by the applicable change property ratio, and add the product of that calculation[5] to 103 percent of the prior year's MAV to arrive at the total MAV for the property.
Turning to the land value, the 2006-07 RMV for the unimproved lot was adjudicated by BOPTA to be $132,000. (Ptf s Ex 1 at 5.) Under ORS 309.115(1), that value was to remain the value for the next five assessment years, subject to certain exceptions set forth in subsection (2) of the statute, including trending. A subsequent adjudicated value restarts the five-year "clock" set forth in ORS 309.115(1). The clock was restarted in this case because after a 31.5 percent increase in the land value in tax year 2007-08 (to $173,584), the assessor increased the land RMV to $312,232 for the 2008-09 tax year (the year under appeal), but BOPTA reduced that *Page 7 
value to $230,019. Plaintiff has requested a land RMV of $150,000 "tops," while Defendant has requested that the current land RMV of $230,020 (rounded) be sustained.
The only real evidence before the court on the value of the land is that put forth by Plaintiff. Both McCown and his wife reported that a local realtor, who resides in the area, valued the land at between $130,000 and $140,000, with a "top end" of $150,000. (Ptf's Ex 1 at 8, 14.) Based on the odd configuration of the subject property, quite wide but not very deep, its location along a busy highway, and in a floodplain, the court finds the value of Plaintiff's land, including the site developments discussed above (well and septic system), to be $150,000.
 III. CONCLUSION
Based on the foregoing, the court concludes that the total RMV of the subject property, as of January 1, 2008, was $249,550. That figure is comprised of an improvement RMV of $99,550 with the home at 55 percent complete, and a land RMV of $150,000 including site developments. The court further concludes that the total exception RMV was $115,850. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal for a value reduction is granted consistent with the values set forth above, which are slightly higher than Plaintiff's requested values but considerably lower than the values requested by Defendant.
Dated this ___ day of May 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged. *Page 8 
 This Decision was signed by Magistrate Dan Robinsonon May 10, 2010. The court filed and entered this Decisionon May 10, 2010
[1] Value is rounded from BOPTA Order.
[2] $181,000 cost / 1812 sq. ft. = $99.89 per sq. ft.
[3] McCown initially testified that the cost was "about $16,500." However, the breakdown of costs came to $16,300.
[4] All references to the Oregon Revised Statutes (ORS) are to 2007.
[5] By the court's calculation, the applicable change property ratio (CPR) is 0.7313, which results in an exception MAV of $84,722. Defendant, however, shall perform the required calculations. *Page 1