IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GEORGE WITTEMYER,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)　　TC-MD 100595C
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
MULTNOMAH COUNTY ASSESSOR,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　)　　**DECISION**

　　　　Plaintiff has appealed the real market value (RMV) of the subject property, identified in

the assessor's records as Account R316634, for the 2009-10 tax year.  Trial on the matter was

held by telephone on May 18, 2011.  Plaintiff appeared and testified on his own behalf.  Also

testifying for plaintiff were Kathy Kershner (Kershner), a licensed real estate broker working for

Coldwell Banker at the time of trial, and John Riddell (Riddell), of JKR Construction, who was

the contractor/builder of Plaintiff's home.  Defendant was represented by Scott Carver (Carver),

a state certified appraiser who has worked for Defendant for approximately five years.

Defendant was also represented by Scarlet Weigel, an appraisal supervisor with the Multnomah

County Assessor's office.

　　　　Both parties submitted exhibits at trial and the court admitted all of the proffered exhibits,

except Plaintiff's Exhibits 12 through 29, and most of Exhibit 11 (pages 45 and 46 were

admitted), because those exhibits were either not timely filed under the court's evidence

exchange rule, or otherwise inadmissible under standard evidentiary rules.[1]

/ / /

/ / /

---

[1] Among the problems with the documents in Plaintiff's Exhibit 11, which consisted of a variety of
newspaper clippings, were relevance and authentication.

## I. STATEMENT OF FACTS

The subject property is a custom-built two-level home with five bedrooms and five full bathrooms, forced air heating and cooling, a two-story brick fireplace and three modular fireplaces. (Def's Ex A at 5, 6.) There is a 1,038 square foot garage underneath the two-story main living area. The home was only partially completed on the January 1, 2009, assessment date. Access to the home is via a long tree-lined driveway that is mostly unpaved (dirt/gravel). There is a chain link gate at the entrance to the property.

Plaintiff testified that he has lived on the property since 1968. The original home was destroyed by fire in November 2006. Plaintiff had a new home built on the property in 2008 and 2009. It is the value of the land and new home, which was only partially complete on the assessment date, that is at issue in this case.

The home sits on an approximately two acre, irregularly shaped lot on a hill in the Forest Park neighborhood of Northwest Portland. The parties agree that zoning restrictions limit the buildable footprint area to 5,000 square feet. Plaintiff had the home designed by an architect and construction was begun on or about June 2008, depending on how one determines commencement of construction. Riddell testified that construction was "begun" in June 2008 because that was when the foundation was poured. Given the location of the property (steep hill) and the fact that there is work that must be done before a foundation can be poured, including excavation and site preparation, as well as the building of forms into which the cement is poured to form the concrete foundation, the court presumes that construction actually got underway several months earlier. However, the parties appear to agree that construction was begun sometime in calendar year 2008. The biggest areas of disagreement are how far along the builder was with construction of the home as of January 1, 2009, which is the applicable

assessment date (the date on which the property is valued) for the 2009-10 tax year, and the value of the home on the assessment date.

Defendant determined that the RMV of the subject property, as of January 1, 2009, was $694,570, with $215,500 allocated to the land and $479,070 to the structures (partially completed home). Defendant also determined that there was exception value (EV) of $494,070, which includes the entire RMV of the new home and, presumably, some site improvements. Defendant calculated the assessed value (AV) to be $380,730. Plaintiff appealed those values to the Multnomah County Board of Property Tax Appeals (Board) and the Board sustained the values. (Ptf's Compl at 3.) Plaintiff timely appealed to this court. Plaintiff is requesting an RMV of $257,756, with $47,756 allocated to the land and $210,000 to the home. (Ptf's Compl at 2.) Defendant submitted a form of an appraisal report that concludes that the total RMV of the property was $720,000 as of January 1, 2009. (Def's Ex A at 4.) However, both in its Answer and at trial, Defendant requested that the court sustain the current RMV on the assessment and tax rolls ($694,570).

The parties disagree on the size of the home, the percent complete, the quality of the home, and, of course, the value. Plaintiff contends that the home's "livable square f[ootage]" is approximately 4,300 square feet compared to Defendant's determination that the home is 4,692 square feet including the basement, plus a 1,038 square foot garage. (Ptf's Trial Ct Br at 2; Def's Ex A at 5, 6, 14.) Plaintiff testified that he was relying on the architect's "factual statement." However, that exhibit was untimely submitted and excluded by the court. Riddell, Plaintiff's builder, testified that the home was "approximately" 4,400 square feet including the usable space in the basement. Carver testified that he inspected and measured the home on November 26, 2008. Defendant submitted a computer-generated sketch of the home that

includes very detailed measurements of the structure, which, like many custom homes, has numerous irregularities in its shape. (Def's Ex A at 14.) Plaintiff did not challenge the accuracy of that exhibit. The court has reviewed the evidence and finds that the home is 4,692 square feet.

Plaintiff contends that the home was 45 percent complete on the January 1, 2009, assessment date, whereas Defendant insists the home was 74 percent complete on that date. (Ptf's Trial Ct Br at 2; Def's Ex A at 3, 4, 6, 7.) Plaintiff relies on the opinion of his builder Riddell who testified that he thought the home was "about 50 percent complete" based on the work he recalled having done up to that point and the fact that he had worked on the home approximately six months by the end of 2008, and completed the home seven months later (*i.e.*, he had done 6 of 13 months work, which is about half). There are no contracts, work orders, purchase receipts, payment records, etc., in evidence to support that opinion. Defendant relied on city permitting records and a site inspection November 26, 2008, at which time Carver observed that the structure had windows, siding, a roof, rough-in plumbing and electrical, that the heating and mechanical systems were in place, and that the drywall (sheetrock) was taped and textured. City permitting records show that site work was begun on the home in February 2008 and structural and plumbing were approved in March 2008. (Def's Ex B at 1 and 2.) That evidence shows that work had begun months before Riddell's June 2008 construction start date. Carver then used applicable standardized statewide guidelines to determine the percent complete for the home. (Def's Ex A at 7.) The court reviewed and considered the parties' evidence on that issue and finds that the home was 74 percent complete as of January 1, 2009.

/ / /

/ / /

/ / /

As for the quality of the home, Plaintiff's only evidence is the testimony of the builder Riddell, who opined that he did not believe Plaintiff's home is a 6N because his home (Riddell) and Plaintiff's are very similar and Riddell's home is a 5P.[2]

## II. ANALYSIS

A.    *The Law*

The issue in this case is the RMV of Plaintiff's home as of January 1, 2009, because that is the assessment date for the 2009-10 tax year. ORS 308.007; ORS 308.210.[3] Oregon law defines RMV for property assessment and taxation purposes as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).

Although there are three recognized methods for valuing property, the sales comparison approach is typically the most appropriate for valuing residential property.[4] *Ward v. Dept. of Revenue,* 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). However, where, as here, the property being valued is a partially completed residence, the cost approach is often the best indicator of value.

This court has previously concluded that real market value "assumes an active or 'immediate' market by which value can be inferred from a number of transactions." *Watkins v.*

---

[2] Neither party submitted evidence on the property class system used by the assessor pursuant to OAR 150-308.215(1)-(A).

[3] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2007.

[4] An administrative rule promulgated by the Oregon Department of Revenue instructs that the three approaches to value (sales comparison, cost, and income) be considered in determining a property's value, but recognizes that all three approaches may not be applicable in a given case. OAR 150-308.205-(A)(2)(a). Because the subject property is owner occupied and does not generate any income, neither party used the income approach in valuing Plaintiff's property. Because land value is at issue, the typical methodology prescribed by the cost approach is not relevant.

*Dept. of Rev.* (*Watkins*), 14 OTR 227, 229 (1997). In *Watkins,* the court stated that "[r]arely is there a market for partially completed structures. Accordingly, assessors commonly use the cost approach." *Id.* The court suggested that "statewide" data can be collected and compiled into cost factors that can be adjusted by the county assessor for local conditions. *Id.* Those factors can then be used to estimate the total cost of a structure in a given location. Another equally satisfactory method is for the assessor to total "the cost of the work completed as of" the assessment date. *Id.* at 230.

This court has followed the rationale in *Watkins* for using the cost approach for partially completed structures. *See e.g.*, *Coos County Assessor v. Smith*, TC-MD No 040520D at 21 (Aug 19, 2005) (noting the court's ruling in *Watkins* that "rarely is there a market for partially completed structures"); *Hochstein v. Lane County Assessor*, TC-MD 070351, 2008 WL 399020 at *2 (Feb 13, 2008) (citation omitted) (noting that "[t]here is rarely a market for partially completed structures," and stating that "with the construction of new homes * * * it is common to rely on cost data." )

The two common methods for determining value under the cost approach are: (1) using published and approved cost data such as that compiled by Marshall & Swift and incorporated into the Oregon Department of Revenue's valuation materials; and (2) actual costs. *Watkins* at 229, 230.

The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted); *Sahhali South v. Tillamook Cty. Assessor*, TC-MD 090541C at 6 (Dec 30, 2010). The party seeking affirmative relief has the burden of proof and, initially, the burden of going forward with the evidence. ORS 305.427. The burden of proof in the Tax Court is a "preponderance" of the evidence. *Id.* A "[p]reponderance of the

evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue,* 4 OTR 302, 312 (1971) (citation omitted). This court has previously noted that value is a range rather than an absolute. *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977). Moreover, the legislature has given the court jurisdiction "to determine the real market value or correct valuation on the basis of the evidence before [it], without regard to the values pleaded by the parties." ORS 305.412.

B.    *The Evidence*

1. *Improvement RMV*

Plaintiff purports to rely on actual costs, but there are no cost records in evidence to support Plaintiff's claim. Riddell testified that the total cost for the complete construction of the home was $476,000, and that, based on his calculations, the actual cost of the structure as of January 1, 2009, was approximately $224,600, and was 50 percent complete.[5] There is no evidence to substantiate that testimony. Moreover, as indicated above, the evidence shows the construction actually began in February or March 2008, and Riddell testified that he did not begin construction until June 2008. That strongly suggests to the court that Plaintiff spent more money on the home up to January 1, 2009, than Riddell was able to report. Plaintiff never actually testified to the actual costs incurred as of January 1, 2009. Plaintiff states in his Trial Court Brief that he spent $210,000 on the "partially built structure as of January 1, 2009." (Ptf's Trial Ct Br at 3.) Plaintiff references an Exhibit (23) in that brief, but that was one of many exhibits submitted untimely and excluded by the court. Plaintiff testified on cross-examination

---

[5] Riddell testified that, according to his calculations, Plaintiff had paid him approximately $313,600, including his 10 percent commission, but that various items had been paid for that were not yet installed, including the hardwood flooring and doors and other finished materials for which Plaintiff had been billed $40,000, as well as a $5,000 deposit for appliances and another $5,000 paid for a storm water collection system that Riddell was unable to install due to weather. Riddell estimated that the total amount Plaintiff paid for the items not installed or completed came to approximately $89,000, which, when subtracted from the $313,600 figure comes to $224,600.

that he had the house insured for $680,000. Plaintiff testified that he did not take out a loan to build the current home because he used the proceeds from the insurance paid for the loss of his original home that was destroyed by a fire, and that he did not obtain an appraisal before proceeding to rebuild.

If Plaintiff is to be believed, the cost of his home as of January 1, 2008, was $48.63 per square foot ($210,000 improvement value ÷ 4,318 square feet). Defendant's value, on a per square foot basis, is $103 per square foot ($483,260 Improvement Value ÷ 4,692 square feet). (Def's Ex A at 6.)

Defendant placed primary reliance on the cost approach for the value of the improvement, although consideration was also given to the comparable sales approach. Defendant used the Department of Revenue's 2005 cost factor book as the source of its cost data, with annual trending applied to the January 1, 2009, assessment date. (*Id*. at 4.) Carver testified on cross-examination that the adjustments made to the 2005 cost factors were for annual trending, which rose in 2006 and 2007 before experiencing a slight decline in 2008. The trending that Carver referred to was based on market forces apparently derived from the assessor's annual ratio studies. Defendant's appraiser Carver determined that the value of the home under the cost approach was $483,260. (Def's Ex A at 6.) Carver used different per square foot values for the main floor living space, the second floor, the basement, garage, etc. (*Id*.)

Carver placed primary reliance on the cost approach, but he also valued the property under the "market" approach. (*Id*. at 4, 5.) Carver's Comparables Sales Analysis analyzed three properties that he testified "bracketed the subject," in that the properties included both superior and similar type homes, all of which had steep driveways. After removing the value of the land,

and factoring in the percent complete for the subject at 74 percent, Carver concluded with a value estimate for the partially completed home of $505,000. (*Id*. at 5.)

Plaintiff argues that Defendant has no persuasive evidence for its value, that the percent complete Defendant used was not reliable and conflicts with his evidence, that Defendant's improvement comparables are not truly comparable, and that, based on cost, percent complete, and the indicated value derived from a property on McKenna Street, he has substantiated his requested value of $257,500 and Defendant has simply failed to prove its case by more than doubling the value of the property.

Defendant responds that the *Watkins* and *Smith* cases establish that the cost approach is the best approach to use in valuing partially completed structures, and that, if the property has no readily discernible market value, ORS 308.205(2)(c) provides that the measure of a property's value is just compensation.[6] Defendant further argues that Plaintiff has no market evidence for his land value, and that there are no documents to substantiate Plaintiff's alleged costs. There was no competitive bid, and there is no evidence to conflict with Defendant's determination of the property's percentage of completion as of the assessment date. Accordingly, Defendant has requested this court to sustain the total RMV on the rolls of $694,570, with $215,500 allocated to the land and $479,070 to the partially completed home.

The court is simply not persuaded by a preponderance of the evidence that Plaintiff has established that the RMV of the partially completed home should be reduced. There is little or no supporting evidence for the testimony Plaintiff presented, and the numbers simply seem too low. As indicated above, Plaintiff has the burden of proof and the court finds that Plaintiff has failed to meet that burden. Although Defendant has presented a value for the home that is

---

[6] That statute provides in relevant part that the RMV of property with no immediate market value "is the amount of money that would justly compensate the owner for loss of the property."

slightly above the value currently on the rolls, Defendant has requested that the court sustain the improvement RMV. After considering the matter, the court finds that the RMV of the partially completed home, at 74 percent complete, should remain unchanged at $479,070.

2. *Land RMV*

The court must next determine, from the evidence, the RMV of the approximately two acre, irregularly shaped lot on a hill in the Forest Park neighborhood of Northwest Portland.

Plaintiff's broker Kershner, who has 26 years of experience in the real estate business and demonstrated a detailed knowledge of the subject property, testified that the estimated value of Plaintiff's land was $75,000 at most. Kershner explained that she was familiar with the Balch Creek watershed protection plan, which limits the buildable footprint for the subject and other homes in the area to 5,000 square feet, which is a small percentage of the two-plus acre lot.

Kershner further testified that the subject property is on the north side of a steep hill, which, in her professional opinion, creates several problems. First, the slope is so steep that access is difficult. Kershner testified that "you practically need a four-wheel-drive vehicle" to get to the house. She described access to the home as being similar to driving to a campsite. The poor condition of the driveway, which is mostly dirt, with areas of asphalt pavement, has numerous potholes, factors that exacerbate the problem of vehicular excess created by the steep incline. Second, the fact that the property is on the north side of the hill limits the property's light, which, in Kershner's professional experience, is a negative factor for properties in Oregon because Oregon has a great deal of dark rainy weather (especially during the winter), and many prospective homeowners "want light." Third, the property is subject to three easements, and the driveway meanders through two properties that are not well maintained (characterized by Kershner as "shacks").

Plaintiff's builder Riddell testified that the lot was "a dump." Riddell testified that he advised Plaintiff not to build there because access was, in his view, "ridiculous." Riddell testified that in all his years of construction, this was "the worst build of [his] life." The hill was so steep that pre-manufactured trusses could not be delivered (the truck could not negotiate the steep, tree-lined driveway), requiring Riddell to build trusses on site. That effort adds time and money to the cost of the home, although there was no testimony from Riddell or Plaintiff on that aspect of the home's value.

Defendant estimates the RMV of the land to be $235,000 as of January 1, 2009. (Def's Ex A at 4, 16.) Carver relied on the comparable sales approach to value the land. Carver evaluated four land sales that he deemed comparable to the subject. All four sales occurred in 2008 and are in the same general area as the subject. (*Id*. at 16.) The unadjusted sales prices for the four comparables ranged from a low of $225,000 for a much smaller buildable lot (0.15 acres) 3.3 miles from the subject that sold in November 2008, to a high of $310,000 for a larger 7.79 acre lot 7.5 miles from the subject that sold in July 2008. (*Id*.) Carver testified that he gave the most weight to his comparable sale #1, a 0.75 acre lot that sold March 31, 2008, for $300,000. (*Id*.) After making adjustments for date of sale, location, view, size, and improvements, Carver arrived at a range of adjusted sales prices of between $202,700 to $269,500. (*Id*.) Comparable sale #1 had an adjusted sales price of $212,000. (*Id*.)

The court finds the issue of the land value a little more difficult because Plaintiff presented the dramatic and compelling testimony of a broker and the builder, both of whom stated under oath, and based on extensive first-hand knowledge, that the lot itself suffered many defects. The broker, a 26 year veteran, estimated the lot to be worth no more than $75,000. Unfortunately, no market data was presented. Defendant presented a persuasive appearing

market-based approach using four comparable sales, but Carver gave virtually no testimony to explain his conclusion. Carver did testify that comparable sales #2 and #3 each had 5,000 square foot building area restrictions and steep driveways like the subject. Based on the record, the court finds Plaintiff has failed to meet his burden of proof by demonstrating that it is more likely than not that there is an error in the RMV of his land as it appears on the assessment and tax rolls. Accordingly, the court finds the $215,500 RMV on the rolls should be sustained.

### III.  CONCLUSION

After carefully considering the matter, the court concludes Plaintiff has failed to prove that the RMV of his property, identified as assessor's Account R316634, as of January 1, 2009, should be reduced, and that the values on the rolls should be sustained. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that the home on the subject property was 74 percent complete as of January 1, 2009.

IT IS FURTHER DECIDED that the current values on the assessment and tax rolls (RMV, exception RMV, MAV, and AV), as determined by Defendant and sustained by the Multnomah County Board of Property Tax Appeals, are sustained.

Dated this ＿＿ day of March 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*
*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*
*This document was signed by Magistrate Dan Robinson on March 2, 2012. The Court filed and entered this document on March 2, 2012.*