IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

WILLIAM B. HAIFLEY )
and ROBYN A. HAIFLEY, )
)
        Plaintiffs, )   TC-MD 110384C
)
    v. )
)
DESCHUTES COUNTY ASSESSOR, )
)
        Defendant. )   **DECISION**

Plaintiffs appeal the Deschutes County Board of Property Tax Appeals Order, dated

March 15, 2011, determining the 2010-11 real market value (RMV) of their property, identified

as Account 209042 (subject property). A telephone trial was held November 16, 2011. Plaintiffs

appeared and testified on their own behalf. Josh Hansen (Hansen), a licensed Oregon real estate

agent since 2000, testified on Plaintiffs' behalf. Rebecca Oja (Oja), registered Oregon appraiser,

employed by the Deschutes County Assessor's office, appeared and testified on behalf of

Defendant.

I.  STATEMENT OF FACTS

Plaintiffs appeal the RMV of their subject property, a 0.37 acre parcel with a 76 percent

complete, single-level, 3,257 square foot home. (Def's Ex A at 1.) The property is located

within the River Canyon Estates subdivision in Bend, Oregon, along the rim of a canyon.

According to Defendant's appraisal, the development "is a self-professed 'outdoor oriented

community of luxurious homes that sits alongside the rim of the Deschutes River.' " (Def's Ex A

at 1.) According to Defendant's report, "[t]he community is within walking distance of the

Deschutes River trail, community parks, and schools, and only five minutes from the Old Mill

District which is a popular area offering dining, shopping, and entertainment." (*Id*.) The parties

agree that the home was only 76 percent complete as of January 1, 2010, which is the assessment date for the 2010-11 tax year.

By their Complaint, Plaintiffs were requesting an RMV of $336,565. Prior to trial Plaintiffs submitted a more recent market analysis prepared by Hansen, the real estate broker, that estimated Plaintiffs' value to be $282,000 "as of January 2010." Based on that value opinion, and certain calculations performed by Plaintiffs, Plaintiffs revised their requested relief, asking that the RMV be reduced to $282,000.

Defendant originally set the January 1, 2010, RMV at $476,030, with $127,200 allocated to the land and $348,830 to the improvements. (Ptfs' Compl at 17.) Defendant determined that there was new ("exception") value of $363,330, the majority of which was attributed to the new, partially completed home ($348,830), with an additional $14,500 of exception value added to the land to account for site developments. (Ptfs' Compl at 7.) The assessed value (AV) was set by Defendant at $476,030. (*Id*.)

Plaintiffs appealed those values to the County Board of Property Tax Appeals (BOPTA) and BOPTA reduced the values. BOPTA found an RMV of $425,700, reducing the improvement RMV (the home and other structures) from $348,830 to $298,500, and leaving the land RMV unchanged at $127,200. (*Id.)* That reduced the exception RMV for the "structures" to $298,500, for a total exception RMV of $313,000. (*Id.)* Although the BOPTA order indicates that the MAV is $246,440, Defendant's representative Oja explained that the total MAV was $506,240, comprised of the prior year's MAV $246,440 plus the MAV for the exception value of $259,800 ($313,000 x 0.83 CPR = $259,800). Because the RMV is less than the MAV, the property's AV was set by BOPTA at $425,700.

/ / /

A.      *Plaintiffs' Valuation*

In their valuation of the subject property, Plaintiffs relied exclusively on Hansen's "revised market analysis" and testimony. (*See* Ptf's Ltr at 1, Oct. 9, 2011.) Hansen utilized only the sales comparison approach and did not consider any other approach to value. Hansen researched six comparable home sales in the River Canyon Estates subdivision, occurring from February 23, 2009, to December 12, 2009. (Ptfs' Ex 3 at 1; Ex 4 at 1-6.) Hansen calculated an average sale price of $105.19 per square foot for the comparable sales. (Ptfs' Revised Report at 2.) Hansen multiplied the average square foot sales price by the subject property's square footage and added a "grossly overstated" canyon lot premium of $35,000 to value the property at $377,000 as complete. (*Id.*) Hansen testified that he "picked a random number" for the canyon premium based on his experience selling lots and homes in River Canyon Estates. Hansen relied on no other adjustments for value. At 75[1] percent complete, Hansen valued the subject property at $282,000. (*Id.*)

B.      *Defendant's Valuation*

Oja, in her appraisal of the subject property, considered the cost approach, the sales comparison approach, and the income approach. Oja did not rely on the income approach "as the property is not income producing, nor is such use considered to be the property's highest and best use." (Def's Ex A at 4.)

1.      *Sales Comparison Approach*

Oja used two methods of sales comparison approach to value the property. First, Oja applied a time-trended depreciation of the most recent sale of an identical model as the subject property. The most recent sale was January 10, 2007, for $863,111. (Def's Ex B at 1.) Oja

---

[1] Although the parties agreed that the house was 76 percent complete at assessment date, it is not clear why Hansen used a 75 percent completion value.

compiled data from 14 different properties to "illustrate the overall market trend and depreciation from 2007 to 2010." (*Id*.) She calculated an "average monthly downtrend" of 1.1 percent. (*Id*.) Applying that downtrend to the 2007 sale over 36 months resulted in a value of $521,319 for the subject property. Oja rounds that number to an even 520,000 in her report. (*Id*.)

Because the 2007 sale had a more expansive view than the subject property, Oja examined three pairs of properties to calculate a 4.5 percent decline in value from "expansive" to "limited" view property. (*Id*. at 1-2.) Oja applied the 4.5 percent view adjustment to the time-trended value of $520,000 (a negative adjustment of $25,000), to arrive at a RMV estimate of $495,000 for the subject property as complete. (*Id*.)

Oja then removed the value of the land and site developments of $127,200 (as determined by the assessor and sustained by BOPTA), to arrive at a total improvement value of $367,800. (*Id*. at 2.) Oja multiplied that value ($367,800) by the agreed-upon percent complete (76%), which resulted in a value estimate for the partially completed home of $279,530 (rounded). (*Id*.) Finally, Oja added back her land value estimate of $127,200 to arrive at an RMV for the subject property (land and partially completed home) of $406,730 as of January 1, 2010. (*Id*.)

Oja performed a second sales comparison analysis that did not include prior year data, relying instead on the sales of six similar properties in the subject subdivision that bracketed the January 1, 2010, assessment date in terms of the date of sale. (*Id*.) Those homes were all similar in size to the subject (between 3,000 and 3,450 square feet compared to 3,257 square feet for the subject). (*Id*.) They sold between August 13, 2009, to June 25, 2010, sale prices ranging from $292,000 to $325,000. (*Id*.) To these values, Oja made adjustments for time, single level dwellings, a "Canyon Premium", distressed sales, and size. (*Id*.) Oja found that the adjusted sales prices from that analysis ranged from a low of $591,000 to a high of $691,000 for similar

completed homes in the same subdivision as the subject property, compared to Oja's revised RMV estimate of $495,000 for Plaintiff's completed home. (*Id.*)

Oja used sales from a different subdivision, River Rim, to calculate the adjustment from "two-story" properties to "single-story" properties. (Def's Ex G at 1.) Oja testified that she used sales in River Rim to calculate the adjustment because there were no single story sales in River Canyon Estates. Oja examined seven pairs of sales to conclude that there was a 20 percent average increase in sales price from one-story to two-story homes. (*Id.*)

Oja used a "Canyon Premium" to adjust for the lot's location along, and view of, a canyon. She compared 11 non-canyon sales to one comparable canyon sale to calculate a minimum canyon premium of $193,112 and an average canyon premium of $244,617. (Def's Ex F at 1.) Oja used a value of $200,000, less than the average premium, to adjust the comparable sales. (Def's Ex B at 2.)

The same 11 sales were used to research the adjustment for distressed sales. (Def's Ex I at 1.) Of the 11, eight were distressed, or "short" sales. (*Id.*) Oja compared the average price per square foot of distressed sales to the average price per square foot of the arms-length sales to calculate a 120 percent average increase in sales price. (*Id.*) Oja used this percentage to adjust the comparable properties. (Def's Ex B at 2.)

After applying the various adjustments to the comparable sales, Oja calculated an average adjusted sales price of $633,120. (*Id.*) Oja rounded that number is $630,000 and, at 76 percent complete, she estimated the subject property's RMV to be $509,330. (Def's Ex D at that 1.)

2.      *Cost Approach*

In her cost approach, Oja utilized "[c]ost information [that] was established from Marshall & Swift as well as local contractors for site improvements." (Def's Ex C at 1.) Oja

valued the 3,257 square foot "Dwelling" at $110.24 per square foot and the 732 square foot "Garage" at $37.05 per square foot. (*Id*.) Oja then added an "Opinion of Site Value" of $112,700 and an " 'As is' value of Site Improvements" of $29,000 to reach an "Indicated Value by Cost Approach" of $527,740 for the subject property as completed. (*Id*.) Reducing the value of the improvements to 76 percent to reflect the value at the assessment date, Oja arrived at an "Indicated Value by Cost Approach as of 1/1/10" of $420,590. (*Id*.)

3.      *Reconciliation*

Oja notes that each of her valuation methods supports or exceeds the roll value as found by BOPTA. The value found by BOPTA is "17% below the sales approach, 3% above the cost approach, and 4% above the 2007 to 2010 analysis." (Def's Ex D.) Defendant requested that the court sustain the current roll value of $425,700.

C.      *Summary/Contentions of the parties*

Plaintiffs rely solely on the sales comparison approach, with a single lot adjustment. Plaintiffs disagree with Defendant's sales comparison, specifically the use and amounts of Defendant's adjustments to value. Plaintiffs state:

> "There is no explanation as to why $200,000 is added to the sales prices for each of the sales * * *. The presentation by [Defendant] is to establish a value other than sales values based upon a distressed sales price. We respectfully submit that the sales price of a distressed property (whether by foreclosure or short sale) is the purpose for establishing the Real Market Value. The real market value of the property should be established with a value that a willing seller and willing buyer agree is the value of the property. The court should consider that any arbitrary adjustments to sales prices should not be taken into consideration. The market shall establish the value based upon what a buyer and seller considers a fair price. This should not be affected by a classification of 'distressed property'."

(Ptfs' Ex E at 1.) Plaintiffs contend that the value of the subject property is between $282,000 and $325,000. (Ptfs' Ex A at 1.)

/ / /

Defendant used the sales comparison approach and the cost approach in its valuation of the subject property. Defendant contends that its appraisal supports BOPTA's determination of the RMV of the subject property, $425,700.

## II. ANALYSIS

At issue in this case is the RMV of a Plaintiffs' partially completed home. RMV is the standard used throughout the ad valorem statutes except for special assessments. *See Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). RMV is defined by statute as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).[2] "Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2).

The Department of Revenue promulgated an administrative rule, OAR 150-308.205-(A)(2)(a), which states: "For the valuation of real property all three approaches – sales comparison approach, cost approach, and income approach – must be considered. For a particular property, it may be that all three approaches cannot be applied, however, each must be investigated for its merit in each specific appraisal."

This court has previously noted that RMV "assumes an active or 'immediate' market by which value can be inferred from a number of transactions." *Watkins v. Dept. of Rev. (Watkins)*, 14 OTR 227, 229 (1997). There are instances where a property has no immediate market. Under Oregon law, "[i]f the property has no immediate market value, its real market value is the

___

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009 unless otherwise noted.

amount of money that would justly compensate the owner for loss of the property." ORS 308.205(2)(c).

As this court stated in *Watkins*, that "[r]arely is there a market for partially completed structures. Accordingly, assessors commonly use the cost approach. That approach is generally accurate for new construction even when complete, but is particularly helpful in estimating the potential loss to an owner." *Watkins*, 14 OTR at 229.

In the Tax Court, "a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. In this case, Plaintiffs are seeking relief and thus bear the burden of proof. This court has previously ruled that "preponderance" means "the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971)). In cases where the RMV of a property is at issue, as here, "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)).

As stated in *Watkins*, the cost approach commonly provides the most convincing evidence of market value when valuing partially completed structures like the subject. Plaintiffs did not consider the cost approach. The only method Plaintiffs used was the sales comparison approach, with a single $35,000 lot adjustment. Further, Plaintiffs criticized Defendant's adjustments for size, single level dwellings, canyon premium, and distressed sales. OAR 150-308.205-(A)(2)(c) states:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, *or adjusted to be comparable*, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they *reflect arms-length market transactions*. When nontypical

market conditions of sale are involved in a transaction (duress, death, foreclosures, inter-related corporations or persons, etc.) the transaction will not be in the sales comparison approach unless *market-based adjustments can be made for the nontypical market condition*."

(Emphasis added). Contrary to Plaintiffs' contentions, adjustments to sale prices are necessary when relying on the sales comparison approach. Distressed sales must typically be adjusted to reflect arms-length transactions. Plaintiffs did not provide competent evidence to justify their requested value. Notably, Plaintiffs did not consider the cost approach. Further, Plaintiffs did not adequately adjust their comparable sales; a "random number" based on experience is not a convincing method of valuation. Accordingly, the court finds that Plaintiffs failed to carry their burden of proof.

The legislature has given the court jurisdiction "to determine the real market value or correct valuation on the basis of the evidence before [it], without regard to the values pleaded by the parties." ORS 305.412. Defendant, in considering the cost approach, utilized "[c]ost information [that] was established from Marshall & Swift as well as local contractors for site improvements." (Def's Ex C at 1.) Defendant examined the cost per square foot of the "Dwelling" and "Garage." (*Id.*) That information, alone, does not provide a sufficient evidentiary basis for the court to determine the RMV of the subject property based on the cost approach. More specific costs associated with the property are necessary. The court finds itself without sufficient evidence to independently determine the value of the subject property different from the value found by BOPTA.

### III. CONCLUSION

The court finds that primary reliance should be placed on the cost approach because Plaintiffs' home was only partially completed on the January 1, 2010, assessment date. Plaintiffs did not consider the cost approach and did not adequately adjust their comparable sales under

their sales comparison approach.  Plaintiffs, therefore, failed to carry their burden of proof.

Accordingly, the court concludes that BOPTA's RMV of $425,700, must be upheld.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that the RMV of property identified as Account 209042 for tax year 2010-11 is $425,700.

Dated this ___ day of May 2012.

 

 

DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on May 30, 2012.  The Court filed and entered this document on May 30, 2012.*