THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RICHARD KOHLER          )
and JANEAL KOHLER,       )
                        )
            Plaintiffs,  )     TC-MD 110449C
                        )
        v.              )
                        )
DOUGLAS COUNTY ASSESSOR, )
                        )
            Defendant.   )     **DECISION**

Plaintiffs appeal the 2009-10 real market value (RMV) and exception value (EV) of property identified as Account R132634 (subject property). An additional appeal of the 2010-11 tax year was withdrawn at trial. The trial was held by telephone on June 27, 2012. Roger A. Hartman (Hartman) appeared and testified on Plaintiffs' behalf; Plaintiffs did not personally appear or testify at trial. Paul E. Meyer, Douglas County Counsel, represented Defendant at trial. Ken Vedder (Vedder), Registered Property Appraiser II, Douglas County Assessor, testified on behalf of Defendant. Plaintiffs' Exhibit 1 and Defendant's Exhibit A were admitted without objection.

I.      STATEMENT OF FACTS

Plaintiffs' purchased the 1.77 acre subject property lot, located approximately nine miles west of Roseburg, Oregon, for $99,000 in June 2008. (Def's Ex A at 2; Ptfs' Ex 1 at 2-3.) Hartman testified that at the time of purchase the lot contained only a few on-site developments (OSDs) such as power (no meter), a water line, and a phone line. After purchase, Plaintiffs constructed a 2,805 square foot single-family residence comprised of three bedrooms and two baths; the home features 2,209 square feet of main floor living space, 596 square feet of finished attic space, and a 900 square foot attached two-car garage with additional toilet facilities. (Ptfs'

Ex 1 at 14; Def's Ex A at 2, 4.) The subject property roll RMV for tax year 2009-10 is $384,291, of which $154,455 is attributed to land and $229,836 to improvements. (Ptfs' Compl. at 3; Def's Ex A at 1.) The roll EV for the subject property for tax year 2009-10 is $266,586, comprised of $36,750 for OSDs and $229,836 for improvements to the home (Ptfs' Ex 1 at 12; Def's Ex A at 1.) On April 18, 2011, Plaintiffs appealed the RMV and EV contained in the 2010-11 Board of Property Tax Appeal (BOPTA) Order, as well as the same values for tax year 2009-10; at trial, Plaintiffs withdrew the 2010-11 tax year from this appeal. (Ptfs' Compl at 1.)

A.      *Stipulated facts*

At trial, the parties preliminarily agreed to certain facts; as a result, the court will treat these as stipulated facts: (1) the residence and garage were 66 percent and 79 percent complete, respectively, as of the January 1, 2009, assessment date (*see* Ptfs' Ex 1 at 17; Def's Ex A at 2, 4); (2) the 2008-09 maximum assessed value (MAV) is $70,235 (*see* Ptfs' Ex 1 at 12, 16); (3) the 2009-10 base MAV is $72,342 (*see id.*); (4) the appropriate changed property ratio (CPR) for 2009-10 is 60 percent (*see* Ptfs' Ex 1 at 16; Def's Ex A at 6.).

B.      *Plaintiffs' value evidence*

At trial, Plaintiffs requested a total RMV of $250,978 for the subject property for tax year 2009-10.[1] Hartman testified he calculated the RMV to include a "base" land RMV of $96,030 plus OSDs of $6,903 (total land RMV of $102,933), an improvement RMV of $148,045, and an EV of $154,948 ($148,045 for new improvement construction and $6,903 for OSDs). (*See* Ptfs' Ex 1 at 3, 16.)

/ / /

/ / /

---

[1] Plaintiffs requested an RMV of $255,000 in their original Complaint but adjusted the values at trial. (Ptfs' Compl at 1.) The court will address only the values Plaintiffs requested at trial.

1.    *Sales comparison approach: land RMV*

Hartman testified he completed a sales comparison approach for the land RMV, offering

four comparables of bare land sales, two of which (comparables 2 and 3) sold in the first half of

2009, the other two (comparables 4 and 5) sold in late 2010.[2]  (*See* Ptfs' Ex 1 at 3.)  The

comparables range in sale price from $70,000 to $110,000, and in size from 1.54 acres to 2.18

acres (with the subject being 1.77 acres and bought by Plaintiffs for $99,000 in June 2008).  (*Id*.)

Each comparable is located in or near the subject property's subdivision, and all were bare lots at

the time of sale.  (*Id*. at 2-4.)  Three are immediately adjacent to the subject property.  (*Id*.)

Plaintiffs do not provide evidence to demonstrate what, if any, OSDs were present on the

comparables at the time of sale, nor do they make adjustments for lot size.

Hartman testified that he included a time adjustment factor to reduce the RMV of the

subject property purchase price by one-half percent per month (6% annually) from the June 2008

date of purchase to the January 1, 2009, assessment date.  (*See id.* at 3, 5-6.)  Hartman also

adjusted Plaintiffs' comparables 2 and 3 by 1.16 percent per month to produce adjusted sale

prices of $112,552 and $73,248, respectively.  (*See id*. at 3, 5-8)  Hartman testified that

comparable 3 best reflects the subject property; however, he also concluded that the 2008 subject

property purchase price, time adjusted to $96,030, provides the best evidence of the subject

property land RMV.  (*See id*. at 2-4.)

2.    *Cost approach: improvement RMV and EV*

Plaintiffs assert an improvement RMV of $148,045 and an EV of $154,948 (including

$6,903 in OSDs).[3]  (*Id*. at 11, 16.)  Plaintiffs argue that "actual costs" are the superior

---

[2] Plaintiffs label their comparables 1 through 5; however, "comparable 1" is the subject property.  (Ptfs' Ex 1 at 3.)

[3] Hartman testified he excluded from OSD the costs attributable to power or the water and phone lines

embodiment of the cost approach. To substantiate their actual costs, Plaintiffs submitted a spreadsheet, which Hartman referred to at trial as "bank ledger" payouts; however, Plaintiffs did not provide additional documentation to support the costs presented in the spreadsheet. (*See id.* at 11.) According to Plaintiffs' spreadsheet, OSDs include: $1,155.20 for excavation; $2,172.63 for septic system; $3,000 for city water and sewer; and $576.45 for driveway expenses. (*Id.* at 11, 16.) Additionally, the spreadsheet notes payments totaling $156,400.37 made for improvements, interest, reserve funds, and consultant fees during the months of September, November, and December of 2008. (*Id.* at 11.) Excluding some of these costs, Plaintiffs derived their requested improvement RMV of $148,045 from the sum of the remaining payments.[4] (*Id.*) Of note, Vedder testified at trial that Plaintiffs acted as their own general contractor. (*See* Def's Ex A at 61.) Plaintiffs do not dispute Vedder's assertion, nor do they provide evidence of payments to sub-contractors for labor. Moreover, Plaintiffs included a column for "sweat equity" in their spreadsheet but failed to place any figures in that column. (*See* Ptfs' Ex 1 at 11.)

C.     *Defendant's value evidence*

Defendant asserts a total RMV of $384,291, with $154,455 attributable to the land (including OSDs of approximately $35,000), and $229,836 to improvements. (Def's Ex A at 1-2, 6, 24; Trl Test) At bottom, Defendant asks the court to sustain the roll values for tax year 2009-10. (Def's Ex A at 1-2, 9; Ptfs' Compl at 3.)

1.     *Sales comparison approach: land RMV*

Like Plaintiffs, Defendant presented a sales comparison approach to determine the land RMV; Defendant offers seven land sales, five of which mirror Plaintiffs' comparables 2 through

---

because those developments were present on the subject property lot at purchase.

[4] Hartman testified that Plaintiffs' calculations of RMV and EV excluded costs of interest and closing costs. The court is unable to determine specifically which of the remaining payments were retained.

5.[5] (Ptfs' Ex 1 at 2-4; Def's Ex A at 17.) Defendant's comparable sales 4 and 5 are located "approximately 4 to 5 miles from the subject." (Def's Ex A at 3.) At trial, Vedder testified he adjusted each of Defendant's comparables for time, size, topography, and utilities (where necessary).[6] (*See id*. at 17.) The adjusted sale prices for Defendant's land sale comparables ranged from $102,277 (comparable 2) to $127,930 (comparable 3). (*Id*.) From those sales, Defendant appears to conclude that the total appraised land RMV is $154,455 including approximately $35,000 in OSDs (making the "base" land RMV $119,455).[7] (*Id*. at 3, 6, 24.) Defendant's $35,000 OSD estimate includes area charges for septic, electrical hook-up, UBWA fees, excavation, utility lines, road, "plans, insurance, etc," and permits and fees. (*Id*. at 3, 23-24.)

     2.     *Cost approach: improvement RMV and EV*

Using the cost approach, Defendant requests an improvement RMV of $229,836 and an EV of $266,586. (*Id*. at 1-2, 4.) For the improvement RMV and EV, Vedder relied on the Department of Revenue's *Cost Factors for Residential Building 1993* (*Cost Factors*), as modified by the applicable local cost modifier (LCM). (*Id.* at 4.) The LCM is explained in Defendant's exhibit as:

---

[5] Vedder testified at trial that Defendant offered only six comparables, four of which were also used by Plaintiffs. Defendant's 2009 unimproved land sales comparison table lists seven comparable sales, one of which (#7) is identified by Vedder as "Supplemental." (Def's Ex A at 17.) Defendant's comparable sales 5 and 6 are two separate sales of the same undeveloped lot (on "0 Dairy Loop"), one sale occurring in March 2009 and the other in September 2010. (*Id*.) Plaintiffs used only the March 2009 sale. (Ptfs' Ex 1 at 3.) It is the two separate sales of the property on 0 Dairy Loop included in Defendant's report that explain why five of Defendant's comparable land sales mirror four of Plaintiffs' comparable land sales.

[6] Defendant indicates all comparables shared with Plaintiffs incorporated similar "utilities" to the subject property at the time of purchase. (Def's Ex A at 17.)

[7] Defendant's appraisal is somewhat difficult to decipher, and was not adequately clarified at trial. Vedder reports on page 3 of his valuation report that the comparable sales and Plaintiffs' purchase price of $99,000, "with site development costs[,] support[] the subject's 2009 land values of $154,455[.]" (Def's Ex A at 3.) Page 4 of that report, however, reflects a "Developed Site Value[]" of $150,000, adjusted upwards to $157,500 based on a 1.05 "recalc." (*Id*. at 4.)

"a market derived modifier that is utilized to modify the 1993 Cost [F]actors for Residential Buildings Manual. The modified values are adjusted to reflect costs in the local area. Each year a local cost index study is conducted county wide. The LCMs are then applied to the base data."

(*Id*.)

Vedder testified he determined the class of the subject property residence to select the appropriate *Cost Factors* cost per square foot ($59, $29.98, and $29.56 for main dwelling, attic, and garage, respectively). In his detailed cost approach calculations appearing in his valuation report, Vedder multiplied those figures by the county's LCM (115 percent for the residence and attic, 120 percent for the garage), and a cumulative time trend (137 percent), to reach a total per square foot rate of $93 for the main dwelling, $47 for the finished attic, and $49 for the garage. (*See id*. at 4, 26.) Vedder reduced the resulting total improvement RMV at completion of $277,549 (comprised of $205,437 for the main dwelling, $28,012 for the finished attic, and $44,100 for the garage) by the cost to complete the building and garage ($79,373 and a $9,261), based on the respective percentages complete (66 percent for the home and attic and 79 percent for the garage), and multiplied by a 105 percent "recalc" value to reach an adjusted improvement RMV of $198,361 for the partially completed home and garage. Vedder then added improvement value of $29,587 for the fence, covered patio, and a general purpose building (shed), including a similar 105 percent "recalc" multiplier. Vedder's final adjusted improvement RMV is $227,948.

Those calculations generated an exception value of $264,698 in Vedder's detailed cost calculations. (*Id*. at 4.) However, in its final value summary, Defendant requests an exception value of $266,586, which is the amount currently on the assessment and tax rolls. (*Id*. at 6.)

/ / /

/ / /

## II.    ANALYSIS

Before the court is the issue of the RMV and EV, and, fundamentally, the MAV and AV of the subject property for the 2009-10 tax year; the parties differ as to each. As the party seeking affirmative relief, Plaintiffs must carry the factual burden of proof to prevail in this appeal. ORS 305.427.[8] To do so, Plaintiffs must demonstrate that their requested RMV and EV are more likely than not the correct 2009-10 values for the subject property. *Yarbrough v. Dept. of Rev. (Yarbrough)*, __ OTR __ (Dec 20, 2011) (slip op at 3); *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

A.    *Real market value*

"Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor,* TC–MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.,* 13 OTR 343, 345 (1995)). ORS 308.205(1) defines the "real market value" of both real and personal property:

> "Real market value * * * means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The three valuation approaches generally used to determine RMV – cost, income, and sales comparison – must be considered when calculating RMV, although each need not ultimately be applied. ORS 308.205(2); OAR 150–308.205–(A)(2)(a); *see*, *e.g.*, *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). The question of the value of an appealed property is a question of

---

[8] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

fact; as such, the court holds the discretion to reach an RMV "on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412; *see Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted). Moreover, as a question of fact, the court determines the proper valuation approach to be used in a particular appeal. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979). Neither party asserts the income approach in this appeal, which is typically confined to valuing income-generating property. *NYEI LLC v. Umatilla County Assessor*, TC-MD No 110340D, WL 114204 at *10 (Jan 13, 2012) (citing Appraisal Institute, *The Appraisal of Real Estate* 447 (13th ed 2008)). The court agrees the income approach is inappropriate for the subject property.

       1.     *Requested RMV*

Plaintiffs request a total RMV of $250,978, broken down as follows: (1) a $96,030 "bare land" RMV, which reflects the 2008 purchase price of the land ($99,000) time-adjusted downward one-half percent; (2) $6,903 for OSDs added following their purchase; and (3) $148,045 for improvements completed by the assessment date. (Ptfs' Ex 1 at 3, 16). Vedder requests the court sustain the 2009-10 roll RMV of $384,291. (Def's Ex A at 2.) In his valuation report, Vedder requests a land RMV of $154,455 (which includes $35,000 of OSDs) and $229,836 for the improvements, for a total of $384,291. (Def's Ex A at 3, 6.) Vedder's summary testimony at trial approximated the components of his RMV request as follows: (1) $115,000 for a "bare land" RMV; (2) $36,000 for OSDs; and (3) $229,836 for improvements.[9] In arriving at their respective land RMVs, Plaintiffs rely on both their purchase price and comparable sales, while Defendant relies primarily upon the sales comparison approach. Both

---

[9] Vedder's trial testimony was concise and intended as a summary of his valuation report. The values he articulated during the trial do not exactly match the total value request in his report ($380,836 per his testimony versus $384,291 in the report).

parties rely primarily on the cost approach in valuing the improvements and determining EV. (*See* Pfts' Ex 1 at 3; Def's Ex A at 17.)

    2.    *Sales comparison approach: land RMV*

The sales comparison approach allows the court to reach a valuation of the subject property by comparing it against "closed sales, listings, or pending sales of similar properties." *Yarbrough*, __ OTR at __ (slip op at 4) (citing *Appraisal of Real Estate* at 297). "That comparison is based on many factors, and adjustments are made for any differences between the comparable sales and the subject property * * *." *Magno v. Dept. of Rev. (Magno)*, 19 OTR 51, 58 (citing *Appraisal of Real Estate* at 63-64); *see* OAR 150-308.205-(A)(2)(c). Of assistance are those "arm's length sale transactions of property similar in size, quality, age and location." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). Recent sales of the subject property can also be very persuasive "[i]f the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing[.]" *Kem v. Dept. of Rev. (Kem)*, 267 Or 111, 114, 514 P2d 1335 (1973).

Plaintiffs present four sales comparisons ranging from $70,000 to $110,000, two for land sales occurring in early 2009 and two for lots sold in late 2010.[10] (Ptfs' Ex 1 at 3.) Each of Plaintiffs' sales and listing comparables is a lot of relatively similar size, located in the same subdivision complex as the subject property. Three of Plaintiffs' four comparables are immediately to the south and contiguous to the subject property. (*Id*. at 4.) Plaintiffs do not provide evidence of any OSDs on their sales comparables; however, Defendant's evidence tends to show Plaintiffs' comparables 2 through 4 feature OSDs similar to the subject property's.

---

[10] Plaintiffs time-adjust the 2009 sales (comparisons 2 and 3) upward by 1.16 percent per month to reach adjusted sale prices of $112,552 and $73,248, respectively; Plaintiffs do not time-adjust sales comparisons 4 and 5. (Ptfs' Ex 1 at 3, 5-8).

(Def's Ex A at 17.)  Plaintiffs urge the court to consider the June 2008 purchase price of the

subject property, with a one-half percent per month (6 percent per annum) time adjustment

downward, as conclusive proof of the land RMV of $96,030.  (Ptfs' Ex 1 at 3, 5-6.)  To support

this adjustment, Plaintiffs offer trending data for southwest Douglas County pertinent to the real

estate market in late 2008.  (Ptfs' Ex 1 at 8-10.)

Defendant provides seven comparable land sales; five are identical to Plaintiffs'

comparables 2 through 5 and the remaining comparables are located nearby.  (Ptfs' Ex 1 at 2-4;

Def's Ex A at 3, 15.)  Vedder testified he adjusted each of Defendant's sales comparables for

time, size, topography, and utilities (where necessary).  (*See id*. at 17.)   At trial, Vedder testified

that Defendant's comparables include a time-adjustment of 4 percent annually.  The adjusted sale

prices for Defendant's land sale comparables range from $102,277 to $120,800.  (*Id*.)  Although

Defendant's appraisal report is not a model of clarity, Defendant appears to calculate a land

RMV of approximately $120,000 for the bare land and $35,000 for the OSDs.[11]

The court agrees that the sales comparison approach is an appropriate method for valuing the

subject property's land RMV.  Moreover, the court finds the June 2008 sale of the subject

property for $99,000 to be a legitimate arm's-length transaction and elects to give it the most

weight.  Plaintiffs have provided sufficient basis for their proposed time-adjustment factor of

one-half percent per month.  Furthermore, the court agrees the requested adjustment

appropriately

---

[11] In one section of Defendant's report, Vedder presents a total land RMV of $154,455 and indicates that that number includes $35,000 for OSDs.  (Def's Ex A at 3, 24.)  Removing the value of the OSDs leaves a bare land RMV of $119,455.  Elsewhere in that report, Vedder presents calculations appearing to show a value of $135,000 for a 1 acre homesite, which appears to include $35,000 for OSDs, and a "Recalc" of 1.05 for a preliminary land RMV of $141,750.  (Def's Ex A at 26.)  Vedder then adds $12,705 for what he apparently views as 0.77 acres of "excess land," to arrive at a total calculated land RMV, in his report, of $157,500.  (*Id*.)  The court's calculations, using Defendant's component parts from the relevant page of the report (Ex A at 26: $141,750 + $12,705), result in a land RMV of $154,455, which squares with the calculations elsewhere in the report and the requested land RMV in Defendant's "Final Summary" (generally titled "reconciliation").  (*Id*. at 6.)

/ / /

reflects market conditions for the subject property on the January 1, 2009, date of assessment. The court finds the RMV of the bare land to be $96,030 as of the date of assessment.

Plaintiffs assert that their 2008 costs for OSDs were $6,903. Plaintiffs' reconstructed cost statement indicates total amounts either spent or allocated for OSDs were $16,600, and amounts taken out as "draws" in 2008 for OSDs of only $6,904 (rounded).[12] Hartman testified that Plaintiffs purchased the lot in June 2008 for $99,000, and that some of the OSDs – power, water, and phone lines – were already in place. Plaintiffs report four categories of OSDs in their spreadsheet: excavating, septic system, city water/sewer, and driveway. (*Id*.) If the court understands Plaintiffs' evidence correctly, Plaintiffs spent 42 percent (rounded) of their reported OSDs in 2008 and presumably the balance in 2009. However, Plaintiffs' list of OSDs does not include a breakdown of expenses for the shop, and fencing does not appear to be included. Further, the court is unable to determine whether the covered patio, another OSD reported by Defendant, is included in Plaintiffs' spreadsheet.

For its part, Defendant reports total OSDs of $35,000, which it multiplies by a 1.05 "Recalc" to reach the value of $36,750 reflected in the tax rolls. (Def's Ex A at 3, 24, 26.) Defendant did not allocate the costs between the two tax years originally under appeal. However, Plaintiffs have the burden of proof and have failed to persuade the court by a preponderance of the evidence that the OSDs were $6,903 or even the total of $16,600. On the evidence before it, the court therefore finds that the OSDs of $36,750 currently on the assessment and tax rolls should be sustained.

---

[12] That is likely due to the fact that construction (beginning with excavation and other site prep) did not begin until September 2008, and only some of the work could be done before the end of calendar year 2008, which is the relevant cutoff date for the January 1, 2009, assessment date for the 2009-10 tax year. (*See* Ptfs' Ex 11.) That is not unlikely due both to the nature of the work involved and the fact that the work was begun in the fall and carried into the beginning of winter.

The total land RMV, including OSDs, is therefore $132,780, comprised of a land RMV of $96,030, and OSDs of $36,750.

3.  *Cost approach: improvement RMV*

When the court selects the appropriate valuation method, it does so based upon the presumption that there exists an "active or 'immediate' market by which value can be inferred from a number of transactions." *Watkins v. Dept. of Rev. (Watkins)*, 14 OTR 227, 229 (1997). This presumption becomes less reliable with improvements that remain incomplete as of the date of assessment because the court recognizes that "[r]arely is there a market for partially completed structures[,]" and for that reason, "assessors commonly use the cost approach." *Id*.; *Village at Main Street Phase II, LLC v. Clackamas County Assessor (Village)*, TC-MD No 070501D (Control), WL 6224490 at *14 (Dec 13, 2011). According to ORS 308.205(2)(c), "[i]f the property has no immediate market value, its real market value is the amount of money that would justly compensate the owner for loss of the property." Hartman and Vedder both testified they placed primary emphasis on the cost approach to value the subject property improvement. (*See* Ptfs' Ex 1 at 11, 16; Def's Ex A at 4, 6.)

To apply the cost approach, a party can follow one of two methods: (1) begin with "cost factors" compiled in the Department of Revenue's *Cost Factors* publication, which represents data collected throughout the state, and subsequently adjust these factors to reflect "local conditions" before applying them to the subject property on a cost-per-square-foot basis; or (2) add together the actual cost of the work performed on the subject property as of the date of assessment. *See*, *e.g*., *Watkins*, 14 OTR at 229-30; *Shah v. Washington County Assessor*, TC-MD No 080354B, WL 140767 at *4 (Jan 21, 2009). Defendant utilized the former approach, while Plaintiffs used the latter. (Ptfs' Ex 1 at 11, 16; Def's Ex A at 4, 6, 23-25.)

On the basis of the "bank ledger" spreadsheet submitted, Plaintiffs allege that the cost of the work completed in 2008 was $154,948. (*Cf.* Ptfs' Ex 1 at 11.) During trial, Hartman testified the costs on Plaintiffs' spreadsheet reflected "actual costs" incurred by Plaintiffs. However, Hartman failed to submit corroborating evidence in the form of bids, receipts, or bank or credit card statements to substantiate this claim. (*Cf.* Ptfs' Ex 1.) Further, the parties do not disagree that Plaintiffs acted as their own general contractor in the construction of the residence. (*See* Def's Ex A at 61.) Yet, Plaintiffs' spreadsheet does not include the cost of labor, either for the general contractor duties they performed or for any relevant sub-contractor work. (*Cf.* Ptfs' Ex 1 at 11.) Counsel for Defendant argued during closing that it would not be unreasonable to increase Plaintiffs' three bank draws in 2008, amounting to approximately $157,000, by 50 percent for labor and an additional 10 percent for profit and overhead, which would result in an improvement value of approximately $251,000. Moreover, Plaintiffs purchased many of the materials at outlets carrying the products for the cheapest price, which a general or subcontractor is less likely to do. A 50 percent increase in Plaintiffs' reported costs results in an adjusted cost of approximately $232,000.

Defendant's improvement RMV estimate under the cost approach utilized the applicable *Cost Factors* values with the appropriate adjustments for changes in market conditions from 1993 to 2009, local cost modifiers, and percent complete. Defendant's final value estimate under that approach was $227,948 ($385,448 total RMV less $157,500 adjusted developed site value), and Defendant ultimately concluded that the slightly higher roll value of $229,836 should be sustained. (Def's Ex A at 4, 6, 26.)

While the cost approach is " 'particularly useful in valuing new or nearly new improvements,' " it is "less useful where the evidence of cost is incomplete, distorted, or

otherwise unreliable." *Magno*, 19 OTR at 55 (citation omitted). The court has cautioned that, as part of the burden of proof, Plaintiffs must "establish by competent evidence what the appropriate value of the property was" on the assessment date. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). Substantiation is integral to proving the viability of information provided to the court to satisfy the burden of proof. *Schaefer v. Lincoln County Assessor*, TC-MD No 040808C, WL 3118686 at *2 (Dec 30, 2004). "Absent substantiation, the court has no way of knowing whether Plaintiffs' * * * information is accurate and reliable." *Id*. Plaintiffs' asserted improvement RMV, corroborated only by the "bank ledger" payout spreadsheet and Hartman's testimony, is insufficiently substantiated to meet Plaintiffs' burden of proof. Furthermore, Defendant correctly notes that Plaintiffs have failed to demonstrate whether certain significant costs, including labor and profit, and fencing, etc., have been included in their cost spreadsheet. Accordingly, the court finds Defendant's evidence to be more persuasive of the correct improvement RMV. The court therefore finds the improvement RMV of the subject property to be the 2009-2010 roll value — $229,836.

B.      *Exception value*

Exception value "is a term used to identify certain changes to property for the current tax year that result in additions to both RMV and MAV," and is "an *exception* to the typical constitutional and statutory cap of three percent on annual increases to MAV." *Banducci v. Douglas County Assessor*, TC-MD No 090069C, WL 3706451 at *1 n 4 (Sep 23, 2010) (citing Or Const, Art XI, § 11(1)(b); ORS 308.146(1), (3)) (emphasis in original). Among such "changes" are the addition of "new property or new improvements" that increase the property value. ORS 146(3)(a); *Strom v. Dept. of Rev.*, 15 OTR 309, 311-13 (2001). The EV is calculated as the excess of the new property RMV over the retirement RMV. ORS

308.153(2)(a). This test "measures the net increase in value as a result of the improvements." *Hoxie v. Dept. of Rev. (Hoxie)*, 15 OTR 322, 326 (2001).

The total 2009-10 EV on the rolls is $266,586, comprised $229,836 for improvement costs and, implicitly, $36,750 for OSD costs. (Ptfs' Ex 1 at 12; Def's Ex A at 1.)

Plaintiffs report EV to be $154,948. (Ptfs' Ex 1 at 16.) They calculate that number based on an asserted cost for OSDs of $6,903 and an improvements cost of $148,045. (*Id*.) Defendant asserts the EV to be $266,586, attributing $36,750 to the OSDs and $229,836 to the home and other improvements. (Def's Ex at 6; Trl Test.) As the partially constructed residence produced the EV for tax year 2009-10, the parties applied the cost approach to determine the appropriate EV.

As with the determination of improvement RMV, for EV Plaintiffs utilize alleged "actual costs" while Defendant applies a *Cost Factors* analysis. Plaintiffs provide the same "bank ledger" payout spreadsheet of disbursements to support their claim of $154,948 in costs attributable to the development of the subject property as of the date of assessment. (Ptf's Ex 1 at 11.) Plaintiffs buttress their spreadsheet evidence with Hartman's trial testimony. However, Plaintiffs fail to present substantiating evidence in the form of bids, receipts, or bank or credit card statements. Additionally, the parties agree Plaintiffs acted as their own general contractor, yet it is unclear if labor was included in Plaintiffs' spreadsheet; the court has been unable to discern where this cost would be included, if, in fact, it is.

At trial, Hartman alleged that Defendant's trending factors do not capture the RMV of the subject property as accurately as "actual cost" data since the factors are based upon a data pool not necessarily related to the particular property. In the past, this court has agreed that trending factors are "generalized from sales data[,]" and that "[a] specific property may increase in value

either at a greater or lesser rate due to its unique characteristics and circumstances." *Hoxie*, 15 OTR at 329. However, Plaintiffs provide no evidence to support an assertion that the subject property contains unique characteristics that set it apart from the "average" property captured in the trending data. Furthermore, it is not enough for Plaintiffs to complain of an error in the roll value, they must affirmatively establish through "competent evidence," a more appropriate EV for the subject property. *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005). Here, girded by the testimony of their representative, Plaintiffs provide only a reconstructed spreadsheet. Without further substantiation, the court cannot place weight on the scant evidence offered and must determine that Plaintiffs' evidence is inconclusive. When "the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235, 238 (1990). Plaintiffs' asserted values are insufficiently substantiated to meet their burden of proof as to the subject property EV. Defendant has also supplied the court with an appraisal that supports the EV found on the 2009-10 tax rolls; as such, the court finds that the roll EV of $266,586 correctly reflects the value Plaintiffs added to their property in 2008.

C.    *Aggrievement*

According to ORS 305.275(1), a taxpayer must be "aggrieved" to have the necessary standing to bring an appeal to this court. *See also Mayer v. Multnomah County Assessor*, TC-MD No 110274N, WL 851756 at *3 (Mar 13, 2012). In Oregon, property tax is imposed on the lesser of two values: the MAV or the RMV of the subject property. ORS 308.146(2); ORS 308.153(3). MAV is a mathematical sum, typically capped at 103 percent of the AV of the previous year.[13] ORS 308.146(1). Because MAV is a mathematical equation that rises steadily

---

[13] Notwithstanding the general rule, when new property is added to a tax account the MAV for that tax year is instead determined by adding the base MAV – the MAV as it would have been placed upon the rolls but for the

each year, while RMV fluctuates to reflect market conditions, aggrievement generally necessitates a drop in RMV below the MAV for the tax year at issue. *Parks Westsac*, 15 OTR at 52. More fundamentally, to be aggrieved, the taxpayer must enjoy a tax savings as a result of the reduction in RMV. *Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000); *Sherman v. Dept. of Rev.*, 17 OTR 322 (2004).

Defendant argues that, even assuming Plaintiffs obtained their requested RMV, the RMV would remain above the current MAV and Plaintiffs could not, therefore, be aggrieved under ORS 305.275(1). (Def's Mot to Dismiss at 2-3.) However, because differing tax rates apply to both the RMV and the MAV, a situation may arise where RMV sits higher than MAV, yet the taxpayer obtains a lowered tax liability, and, therefore, a tax savings. The court has previously explained this occurrence:

> "The constitutional limits of Article XI, section 11b of the Oregon Constitution (Measure 5) apply only to [RMV]. These limits are sometimes lower than the levy rate applied to [MAV]. The value and corresponding levy rate producing the lowest overall tax bill is the one that becomes the 'assessed' value. The term used in such cases is 'compression.' "

*Sherman v. Multnomah County Assessor*, TC-MD No 030294F, WL 21282876 (May 22, 2003).

The roll RMV for the subject property for tax year 2009-10 is $384,291, with a roll MAV of $232,294. The court has concluded the subject property's 2009-10 RMV is $362,616, with $96,030 of that attributable to land, $36,750 to OSDs, and $229,836 to improvements. The EV is $266,836. Contrary to Defendant's claims, the court reviews all values in the aggregate before determining if aggrievement is present: "RMV and MAV of each asset in an account are determined separately, but the Measure 50 comparison of RMV and MAV is done by

new property – to the MAV of the new property or improvements. ORS 308.153(1); ORS 308.146(3). The new property MAV is reached by multiplying the EV by the changed property ratio (CPR). ORS 308.153(1), (2)(a). The parties in this appeal have stipulated to the CPR, both determining the appropriate CPR is 0.60. (Ptfs' Ex 1 at 16; Def's Ex A at 6.) Additionally, it is undisputed that the prior tax year's (2008-09) MAV is $70,235, and that the base MAV for tax year 2009-10 is $72,342. (*See* Ptfs' Ex 1 at 16.)

aggregating such determinations." *Georgia-Pacific Consumer Products LP v. Clatsop County Assessor*, __ OTR __ (Order Granting Mot Part Summ J, Jul 21, 2010) (slip op at 7). Nonetheless, the court has not received evidence demonstrating whether a reduction of the total RMV to $362,616 would result in tax savings to Plaintiffs. Pursuant to ORS 305.275(1), the court's jurisdiction to adjust the land RMV is contingent upon a finding that compression will produce tax savings for the Plaintiffs.

### III.    CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that the land RMV for tax year 2009-10 is $132,780 (including OSDs), but only if Plaintiffs are aggrieved. Because Plaintiffs did not carry the burden of proof that improvement RMV or EV should be changed for the 2009-10 tax year, the roll improvement RMV and EV are sustained. The resulting RMV for tax year 2009-10 is $362,616. Now, therefore,

IT IS THE DECISION OF THIS COURT that the total 2009-10 real market value of property identified as Account R132634 was $362,616.

IT IS FURTHER DECIDED that the 2009-10 exception value of property identified as Account R132634 was $266,836.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that the tax roll will be adjusted only if Plaintiffs are aggrieved.

Dated this ___ day of October 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on October 4, 2012. The Court filed and entered this document on October 4, 2012.*