IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

BENCE LIVING TRUST )
by Stephen Bence IV (trustee), )
)
Plaintiff, ) TC-MD 170117N
)
v. )
)
WASHINGTON COUNTY ASSESSOR, )
)
Defendant. ) **FINAL DECISION**[1]

Plaintiff appeals the exception real market value of property identified as Account

R1431249 (subject property) for the 2015-16 and 2016-17 tax years. The court entered an Order

on June 27, 2017, granting Defendant's motion to dismiss Plaintiff's 2015-16 tax year appeal.

That Order is hereby incorporated in this Decision. A trial was held October 30, 2017, in the

Jill A. Tanner Mediation Center, in Salem, Oregon, to consider Plaintiff's 2016-17 tax year

appeal. Stephen Bence (Bence) appeared and testified on behalf of Plaintiff. Adrienne Wilkes

and Dylan Ross appeared on behalf of Defendant. Abbie Graham (Graham), Property Appraiser

2, testified on behalf of Defendant. Plaintiff's Exhibits 1 to 28 were received without objection.

Defendant's Exhibits A to J and Rebuttal Exhibits K to Q were received without objection.

## I. STATEMENT OF FACTS

The subject property is a two-story home built in 1987 "with above average quality of

construction." (Def's Ex A at 5.) It is located in the Hiteon Ridge subdivision of Beaverton,

which Graham described as unique because it consists of "higher quality single and two story

homes with complex rooflines * * *." (*Id.* at 4.) There is no homeowners association, but homes

---

[1] This Final Decision incorporates without change the court's Decision, entered March 1, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

typically have "well maintained landscaping." (*Id.*) The subject property is situated on a 0.34-acre lot, which is larger than the typical lots ranging from 0.16 to 0.20-acres. (*Id.*)

Before the addition and remodel, the subject property was 2,610 square feet with four bedrooms, 2.5 bathrooms, a three-car garage, and an in-ground swimming pool. (Def's Ex A at 5.) Beginning in September 2014, Plaintiff added a 522-square foot, main-level, master suite addition and remodeled the kitchen. (*See id.*) Bence provided pictures from the remodel project including dates that were taken from "Google photos." (*See* Ptf's Ex 1.) He testified that the kitchen was finished November 17, 2014, and the entire project was finished by January 24, 2015. (*Id.* at 15, 17-18.) The last photo in 2014 was taken on December 19 and shows that the siding was complete. Plaintiff provided no project photos between December 19, 2014 and January 24, 2015. (*Id.* at 17-18.) Bence testified that Plaintiffs were traveling during that time period, but the contractors were still working. (*See id.*) He testified that the only remaining items as of January 1, 2015, were a sump pump, sand bags for soil erosion, and smoke alarms.

Defendant's record, made by a former county employee Grant Struck (Struck), indicated that the new improvements were 80 percent complete as of January 1, 2015. (Def's Ex A at 5.) Bence testified that Struck's inspection was in April 2015. (Ptf's Ex 1 at 20.) Graham testified that Grant made that estimate based on a "drive by" exterior inspection, during which appraisers typically look at the windows, the paint, the roof, and other exterior elements. She testified that 80 percent does not necessarily reflect the value, just an estimate of completion. The final building inspection was requested on January 21, 2015, and approved on January 23, 2015. (Def's Ex D at 35.) The parties agreed the kitchen remodel was complete by January 1, 2015.

/ / /

/ / /

A.      *Cost Approach*

Plaintiff received a contractor bid of $107,624.92 for the master suite addition.  (Ptf's Ex 8.)  Bence testified that he did not know how much Plaintiff actually paid because it received a construction loan from U.S. Bank and the contractor took draws directly from the bank.  He testified that the loan was in the range of $100,000 to $110,000.  Plaintiff received a contractor bid of $24,784.72 for the kitchen remodel, not including the IKEA cabinets Plaintiff previously purchased for $6,229.29.  (Ptf's Exs 5, 7.)  Bence testified that Plaintiff rejected the contractor's kitchen bid as too expensive; he and his wife performed the work themselves, with some paid help from friends.  He testified that Plaintiff ultimately paid about half or a bit less than the kitchen bid.  Graham testified that the kitchen bid seemed reasonable for the caliber of home.

Graham presented the 2016 cost to value comparison study, finding the categories "Portland" and "midrange" applicable to the subject property.  (Def's Ex B at 30.)  Based on the study, 70.9 percent of the cost of a "Master Suite Addition" and 78.1 percent of the cost of a "Major Kitchen Remodel" were typically recouped on resale.  (*Id.*)  Graham testified that applying those percentages to Plaintiff's costs yielded a value of $78,000 for the master suite addition and $24,000 for the kitchen remodel, for a total of $102,000.  (*See* Def's Ex O (applying the percentages to contractor bids, yielding a total value of $100,528.01).)

Graham testified that she performed a cost approach using Marshall and Swift cost estimator and land sales.  (*See* Def's Ex A at 24.)  She concluded a depreciated improvements value of $380,075 to which she added $200,000 for land and $63,400 for onsite developments, for a total indicated value of $643,475.  (*Id.*)

B.      *Sales Comparison Approach*

Plaintiff provided two bank appraisals from U.S. Bank: the first concluded the subject

property's real market value was $600,000 as of August 5, 2014, and the second concluded that its real market value was $580,000 as of March 13, 2017.[2] (Ptf's Ex 9, 23.) Bence testified that that the first appraisal was related to the construction loan. Graham testified that she reviewed each of the appraisals. She found the comparable sales in the August 2014 appraisal were somewhat similar to the subject property, but noted the appraisal was made 16 months before the assessment date. Regarding the March 2017 appraisal, Graham found some discrepancies with the square footage and found the sales comparison approach lacked location, condition, and time adjustments. She noted it was 15 months after the January 1, 2016, assessment date.

Graham performed two sales comparison approach analyses, one meant to reflect the subject property before the addition and kitchen remodel ("pre analysis"), and one meant to reflect it after ("post analysis"). (*See* Def's Ex A at 3, 10, 17.) In her pre analysis, Graham selected three houses ranging in size from 2,132 to 2,930 square feet located within 0.4 miles of the subject property that sold between September 10, 2015, and May 4, 2016. (*Id.* at 17.) The original sales prices ranged from $475,000 to $515,000, and she adjusted them to a range of $508,600 to $567,400, concluding an indicated real market value of $532,000 before the addition and remodel. (*Id.*) For her post analysis, Graham selected three houses ranging in size from 2,844 to 3,405 square feet, located within 1.5 miles of the subject property that sold between August 26, 2015, and April 13, 2016. (*Id.* at 10.) The original sale prices ranged from $575,000 to $620,000, and she adjusted them each upward to a range of $608,700 to $659,900, concluding an adjusted sale price of $659,200 after the addition and remodel. (*Id.*)

In her post analysis, Graham made a $50,000 upward condition adjustment to sales 1 and

_____

[2] Defendant asked Bence about the existence of another appraisal as of December 2015, noting that Plaintiff received additional bank loans totaling $602,000 at that time. (*See* Def's Ex P at 17-18, Ex Q at 37.) Bence acknowledged that Plaintiff, apparently, borrowed more than the subject property was worth.

2 and a $30,000 upward condition adjustment to sale 3 to reflect to subject property's updated kitchen and remodeled master addition.[3] (*See* Def's Ex A at 10.) She testified that the adjustment was necessary because none of her comparable sales had remodeling similar to the subject property. Graham made separate adjustments for differences in square footage and bathroom count. She testified that the adjustment was based on her appraisal judgment.

Based on her analyses, Graham determined the subject property's real market value was $532,000 before the addition and remodel, and $638,290 after the addition and remodel. (*See* Def's Ex A at 3.) She further determined that the entire difference – $106,290 – was attributable to the addition and remodel. (*See id.*) Accordingly, Defendant asks this court to increase the 2016-17 exception real market value from $31,650 to $44,080 so that the entire increase in real market value is captured as exception value over the 2015-16 and 2016-17 tax years. (*See id.*)

Bence testified that Defendant's calculation of the 2015-16 exception value failed to account for market increase and, in fact, assumed a market decrease of $8,000 from 2014 to 2015. (*See* Ptf's Ex 1 at 23, 11 at 3.) He testified that Defendant's failure to account for any market increase caused Defendant to treat the entire increase in improvements real market value as exception value. (*See* Ptf's Ex 1 at 26.) Bence testified that the tax roll real market value of the subject property improvements increased from $287,230 to $340,160 from 2013 to 2014. (Ptf's Ex 11 at 1.) However, Defendant applied to the subject property a 1.3 percent trend from 2014 to 2015 and 6.6 percent trend from 2015 to 2016, with most of the increase to the land value.[4] (Def's Ex G.) Graham testified that market trends were extracted from a study of the subject property neighborhood performed by Defendant's sales analyst, but she did not provide a

---

[3] She testified that sale 3 had remodeled bathrooms with an original kitchen, so she only adjusted it upward by $30,000 for the additional value for a new kitchen. (*See* Def's Ex A at 10.)

[4] Bence noted that Graham made a time adjustment of eight percent to a May 4, 2016, sale (#6), representing a 30 percent annual trend. (*See* Def's Ex A at 17.)

copy of the study. She could not explain why the market trend in the subject property's neighborhood apparently stalled in 2014 following a large increase in 2013, but thought that the cost of lumber and labor may have gone up.

To show that market values increased between 2014 and 2016, Bence offered value estimates from Zillow from the time period spanning January 2014 through January 2017. (*See* Ptf's Ex 1 at 31, Ex 24.) Graham testified that Zillow is not reliable because it uses metadata, unconfirmed sales, and inaccessible proprietary formulas.

C.      *Tax Roll Values and Requested Values*

The subject property's values were as follows from tax years 2013-14 through 2016-17:

| | **2013-14** | **2014-15** | **2015-16** | **2015-16 (BOPTA)** | **2016-17** |
|---|---|---|---|---|---|
| **Land** | $149,770 | $160,370 | $174,310 | $174,310 | $208,190 |
| **Improvements** | $287,230 | $340,160 | $402,150 | $394,770 | $430,100 |
| **Total RMV** | $437,000 | $500,530 | $576,460 | $569,080 | $638,290 |
| **Exception RMV** | $0 | $0 | $69,590 | $62,210 | $31,650 |

(Ptf's Ex 14, Ex 26 at 1, 9.) Plaintiff asks the court to reduce the subject property's 2016-17 exception value to $0 on either of the following theories: (1) the new improvements were completely finished as of January 1, 2015, so there was no exception value for the 2016-17 tax year; or (2) the 2015-16 exception value represented the entire increase in real market value attributable to the new improvements, so there was no exception value to add for the 2016-17 tax year. Defendant asks the court to increase the 2016-17 exception value to $44,080 in order to capture the value increase of $106,290 attributable to the new improvements. If the court finds that the new improvements were complete by January 1, 2015, Defendant intends to add the value of the new improvements as omitted property. (Ptf's Ex 25; Ptf's Ltr, Dec 18, 2017.)

/ / /

The issue is the exception value of the subject property for the 2016-17 tax year. "The term 'exception value' is a creature of Measure 50. It is not found in either the Constitution or statutes, but is a shorthand expression for the occasions triggering a calculation of the [maximum assessed value] for an account under an exception to the calculation rule of ORS 308.146(1)." *Douglas County Assessor v. Crawford*, 21 OTR 6, 7 (2012). The statutory "exceptions" include "new property or new improvements to property." ORS 308.146(3)(a).[5] "New property or new improvements" mean, among other things, changes in value as a result of "[n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property." ORS 308.149(6)(a)(A). Exception value does *not* include value changes due to minor construction, general ongoing maintenance and repair, and market changes. ORS 308.149(6)(b); *Magno v. Dept. of Rev.*, 19 OTR 51, 63 (2006).

This court has previously concluded that "new property or new improvements" includes *only* such property that was new as of the assessment date and that did not exist on the prior assessment date. *See Crawford*, 21 OTR at 11 (ruling that "the beginning point of the measuring period for a determination of what is 'new' is one year prior to the assessment date for the year in question. Anything added before that * * * would, or should, have been taken into account as 'new' on that earlier year roll and should not be treated as 'new' in a later year"); *see also Magno*, 19 OTR at 66 (stating it is "important to include in the calculation of [exception value] only those changes that occurred between January 1, 2002, and January 1, 2003").

However, ORS 308.153 was amended in 2015 to include a new subsection expanding the definition of "new property, or new improvements to property." Or Laws 2015, ch 97, §2. The

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

amendment was first effective for the 2015-16 tax year. Or Laws 2015, ch 97, §3. As amended, ORS 308.153(3) states:

> "(a) For purposes of this section, property shall be considered new property, or new improvements to property, for a tax year if the property:
>
>> "(A) Constituted an integral part of the land or improvements on the assessment date or the date of a site inspection by the assessor for appraisal purposes for any prior tax year;
>>
>> "(B) Has been continuously in existence since the prior tax year; and
>>
>> "(C) Was not included in the assessment of the land or improvements for any prior tax year.
>
> "(b) The following is evidence that the property was not included in the assessment of the land or improvements for a prior tax year:
>
>> "(A) There is no express reference to the property in the records of the assessor; and
>>
>> "(B) The assessor's valuation of the land or improvements of which the property is an integral part increases as a result of inclusion of the property in the assessment."

Thus, under the amended statute, property that was not "new" as of the assessment date may still constitute "new property or new improvements" for purposes of calculating exception value, assuming the three-part test set forth in the statute is satisfied.

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). A party seeking affirmative relief must provide competent evidence of real market value. *See Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005). "[T]he court has jurisdiction to determine the real market value or correct

valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Plaintiff bears the burden of proof on its claim to decrease the 2016-17 exception value to $0. Defendant bears the burden on its claim to increase the exception value to $44,080.

A.    *Whether Exception Value was Properly Added for the 2016-17 Tax Year*

Plaintiff first contends that no exception value should be added for the 2016-17 tax year because the new improvements were substantially complete before January 1, 2015. Bence testified that the only work remaining as of January 1, 2015, was a sump pump, sand bags, and smoke alarms. However, he also acknowledged that he was traveling during the holidays and the contractors continued working after December 19, 2014, and into January 2015. The evidence shows that the project began in September 2014 and the final inspection occurred January 23, 2015. Thus, the entire project spanned less than five months, indicating the work performed in January 2015 constituted 15 to 20 percent of the project time. Perhaps that is why Struck reported the project was 80 percent complete as of January 1, 2015. On that evidence, the court is not convinced that the project was sufficiently complete as of January 1, 2015, to support Plaintiff's request to reduce the 2016-17 exception value to $0.

B.    *What is the Total Exception Value of the New Improvements*

Plaintiff's second theory is that the 2015-16 exception value of $62,210 represented the entire contributory value of the new improvements, so no additional exception value is supported for the 2016-17 tax year. Thus, the court next turns to the question: what is the total contributory value of the kitchen remodel and master bedroom addition, notwithstanding the allocation of the value between the 2015-16 and 2016-17 tax years? The court received evidence under both the cost approach and the sales comparison approach.

1.	*Cost approach*

"Rarely is there a market for partially completed structures.  Accordingly, assessors commonly use the cost approach.  That approach is generally accurate for new construction even when complete[.]"  *Watkins v. Dept. of Rev.*, 14 OTR 227, 229 (1997); *see also Magno*, 19 OTR at 55 (noting that, according to the *Appraisal of Real Estate,* the cost approach is "particularly useful in valuing new or nearly new improvements").  "[A]ctual costs are relevant and often persuasive, but not controlling * * * because the task is to determine market value[.]"  *Murray v. Tillamook County Assessor*, TC–MD 090154C, WL 602442 at *2 (2010).

According to the contractor bid, the actual cost of the addition was $107,600, rounded.  According to Bence, the actual cost of the kitchen remodel was about $18,600 (including the IKEA cabinets), though that is likely low because Bence and his wife performed some of the work themselves.  The actual cost of the kitchen was not more than $31,000 (the rejected bid plus the cabinets).  Applying the applicable percentages from the 2016 cost to value study for Portland, the value added by the master addition was $76,288 and the kitchen remodel was in the range of $14,527 to $24,211.[6]  That indicates a total project value in the range of $90,815 to $100,499.  Over 2015-16 and 2016-17, and taking into account BOPTA's 2015-16 reduction, Defendant added exception value totaling $93,860.  That amount is within the range indicated by cost approach.  *See Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977) (observing that value "is a range * * * rather than an absolute").

2.	*Sales comparison approach*

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant."  *Chambers Management v. Lane County Assessor,*

---

[6] Master addition: $107,600 x 70.9 percent.  Kitchen remodel: $18,600 x 78.1 percent and $31,000 x 78.1 percent.

TC–MD 060354D, WL 1068455 at *3 (Apr 3, 2007). Under the sales comparison approach, "only actual market transactions of property comparable to the subject, or adjusted to be comparable" may be used and all sales "must be verified to ensure they reflect arm's-length market transactions." OAR 150-308-0240(2)(c). To be comparable, properties should be "similar in size, quality, age and location" to the subject property. *Richardson v. Clackamas County Assessor,* TC–MD 020869D, WL 21263620 at *3 (Mar 26, 2003).

Plaintiff offered two appraisal reports, one from 16 months before the assessment date and the other from 15 months after the assessment date. Neither report purported to determine the value of the subject property before the new improvements. The court does not find either report helpful to determining the contributory value of the new improvements.

Graham presented two sales comparison approach analyses meant to demonstrate the subject property's real market value as of January 1, 2016; one before the remodel and addition, and one after. She selected three sales for each analysis, choosing larger properties for the post analysis to reflect the increased size of the subject property after the addition. Based on her analyses, Graham concluded the subject property's real market value was $532,000 before the addition and remodel, and $638,290 after. She concluded the difference of $106,290 was the contributory value of the new improvements.

The court is not convinced that Graham's two analyses accurately measure the contributory value of the addition and remodel. The most significant problem with Graham's analyses is that she identified no comparable sales with recent remodeling and, instead, made upward "condition" adjustments of $50,000 to two of her sales and $30,000 to the third sale, which had remodeled bathrooms but no other remodeling. Her condition adjustment was based on her appraisal judgment, not any market evidence. In making that adjustment to each of her

sales, Graham effectively assumed what she sought to prove: the additional market value realized by remodeling select parts of a 30-year-old home.

3.    *Exception value conclusion*

A preponderance of the evidence supports a finding that the total contributory value of the new improvements was in the range of $90,815 to $100,499.  The total exception value added for 2015-16 and 2016-17 is within the range, so no further adjustment is supported for the 2016-17 tax year.  Accordingly, Plaintiff's request to decrease the 2016-17 exception value to $0 is denied, as is Defendant's request to increase the 2016-17 exception value to $44,080.

C.    *Omitted Property*

Plaintiff asked the court to address Defendant's statement that it intends to assess omitted property if the court reduces the 2016-17 exception value to $0.  As the court stated at trial, it cannot review the merits of an action that has not yet occurred and is not part of this appeal.  However, the court offers a few observations based on its conclusions in this Decision.  First, the court concluded that ORS 308.153(3) permits the addition of previously existing property as "new property or new improvements" under the three-part test set forth in the statute.  However, the court did not need to determine whether the three-part test was satisfied in this case because Plaintiff's addition and remodel project was not complete as of January 1, 2015.  Second, the court concluded that the entire contributory value of Plaintiff's addition and remodel project was captured as exception value over the two tax years, 2015-16 and 2016-17.  Thus, the court found no basis to increase the 2016-17 exception value.

/ / /

/ / /

/ / /

III. CONCLUSION

Upon careful consideration, the court concludes that the total contributory value of Plaintiff's master addition and kitchen remodel was in the range of $90,815 to $100,499. The exception value added for the 2015-16 and 2016-17 tax years, totaling $93,860, adequately captured the value of the new improvements. Accordingly, Plaintiff's request to decrease the 2016-17 exception value to $0 is denied, as is Defendant's request to increase the 2016-17 exception value to $44,080. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's 2015-16 tax year appeal is dismissed.

IT IS FURTHER DECIDED that Plaintiff's 2016-17 tax year appeal is denied.

IT IS FURTHER DECIDED that Defendant's claim, seeking an increase in the 2016-17 exception value, is denied.

Dated this ____ day of March 2018.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Allison R. Boomer and entered on March 20, 2018.*